**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JAMES PARKER,** | § | |
| **CAITLIN COLLINS,** | § | |
| **TAYLOR JACKSON and** | § | **Civil Action No. 3:14-CV-02075-P** |
| **ZACHARY OWENS,** | § | |
| **on behalf of themselves and** | § | |
| **others similarly situated,** | § | **COLLECTIVE ACTION** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SILVERLEAF RESORTS, INC.,** | § | |
| **CERBERUS CAPITAL** | § | |
| **MANAGEMENT L.P., SL RESORT** | § | |
| **HOLDINGS, INC., ORANGE LAKE** | § | |
| **COUNTRY CLUB, INC., and** | § | |
| **ORANGE LAKE HOLDINGS, LLLP** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR FLSA CONDITIONAL CERTIFICATION

Marc D. Katz
State Bar No. 00791002
marckatz@andrewskurth.com
Isabel Andrade Crosby
State Bar No. 24050226
isabelcrosby@andrewskurth.com
Micala R. Bernardo
State Bar No. 24061108
micalabernardo@andrewskurth.com

Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659 4400
Facsimile:  (214) 659 4401

**ATTORNEYS FOR DEFENDANTS**

# Table of Contents

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND .............................................................................. 3

    A.  Silverleaf's Business and Relationship Amongst Defendants ................................. 3

    B.  Orange Lake Now Employs Sales Employees at Former Silverleaf Resorts ......... 4

    C.  Silverleaf's Resorts and Sales Employees were Unique in Important Ways.......... 5

    D.  Silverleaf Correctly Compensated All Employees ................................................. 6

    E.  Orange Lake Compensates Sales Employees Differently than Silverleaf ............. 7

    F.  Silverleaf and Orange Lake Expressly Prohibit Off-the-Clock Work ................... 8

    G.  Plaintiffs Worked in a Variety of Sales Positions and Regularly Recorded Hours Worked in Excess of 40 and Received Overtime Pay ......................................... 10

    H.  Plaintiffs Lack Knowledge of Practices Outside the Resorts and Time Periods in Which They Worked .............................................................................................. 11

    I.  Other Putative Class Members Refute Plaintiffs' Claims..................................... 12

    J.  Extensive discovery has been completed in this case ........................................... 12

III.  ARGUMENT AND AUTHORITIES ............................................................... 13

    A.  "Conditional Certification" Standards under the FLSA ....................................... 13

    B.  The Court Should Apply a Heightened Standard in This Case Because the Parties Have Substantially Completed Discovery ............................................................ 15

    C.  Plaintiff's Motion Nevertheless Fails Even Under the *Lusardi* Approach ........... 17

        1.  Plaintiffs have not established that they are similarly situated to putative class members with respect to a common unlawful policy, practice, or plan.................................................................................... 17

        2.  Plaintiffs have not shown a systematic policy or plan to deny overtime or minimum wage to sales employees. ........................................... 19

        3.  Plaintiffs have not shown that they are similarly situated to other putative class members. ......................................................................... 20

        4.  Plaintiffs' own time and pay records refute their claims. ........................ 21

        5.  Plaintiffs have presented no evidence that other putative class members are interested in joining this lawsuit. ..................................................... 21

        6.  Plaintiffs' characterization of Silverleaf as a "repeat offender" is a red herring. .................................................................................................. 22

    D.  Case law cited by Plaintiffs is clearly distinguishable.......................................... 23

IV.  CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguayo v. Bassam Odeh, Inc.*,
No. 3:13-CV-2951-B, 2014 WL 737314 (N.D. Tex. Feb. 26, 2014) .....................................23

*Aguirre v. SBC Commc'ns, Inc.*,
No. Civ. A. H–05–3198, 2006 WL 964554 (S.D. Tex. Apr. 11, 2006)..................................15

*Badgett v. Texas Taco Cabana, L.P.*,
No. H-05-3624, 2006 WL 2934265 (S.D. Tex. Oct. 12, 2006) ...............................................17

*Basco v. Wal–Mart Stores, Inc.*,
No. 00–3184, 2004 WL 1497709 (E.D. La. July 2, 2004)......................................................16

*Blake v. Hewlett-Packard Co.*,
No. 4:11-CV-592, 2013 U.S. Dist. LEXIS 98690 (S.D. Tex. July 11, 2013) ........................16

*Blaney v. Charlotte-Mecklenburg Hosp. Auth.*,
No. 3:10-cv-592-FWD-DSC, 2011 WL 4351631 (W.D.N.C. Sept. 16, 2011).................18, 19

*Boyd v. Schwebel Baking Co.*,
No. 4:15-cv-871, 2016 U.S. Dist. LEXIS 85378 (N.D. Ohio June 30, 2016) ........................16

*Brooks v. Bellsouth Telecomm., Inc.*,
164 F.R.D. 561 (N.D. Ala.1995).............................................................................................16

*Butler v. City of San Antonio*,
No. SA-03-CA-170-RF, 2003 WL 22097250 (W.D. Tex. Aug. 21, 2003) .............................17

*Castillo v. Hernandez*,
No. EP–10–CV–247–KC, 2010 WL 4595811 (W.D. Tex. Nov. 4, 2010) ..............................15

*Clarke v. Convergys Customer Mgmt. Grp., Inc.*,
370 F. Supp. 2d 601 (S.D. Tex. 2005) ..............................................................................15, 23

*D'Anna v. M/A-Com, Inc.*,
903 F. Supp. 889 (D. Md. 1995) .............................................................................................14

*Desert Palace, Inc. v. Costa*,
539 U.S. 90, 91 (2003)............................................................................................................15

*Freeman v. Wal-Mart Stores, Inc.*,
256 F. Supp. 2d 941 (W.D. Ark. 2003)...................................................................................14

*Gonzalez v. Ridgewood Landscaping, Inc.*,
No. H-09-2992, 2010 WL 1903602 (S.D. Tex. May 10, 2010)........................................24, 25

*Gregory v. Silverleaf Resorts, Inc.*,
No. 1:2007cv03131 (N.D. Ga. 2007).....................................................................................23

*H & R Block, Ltd. v. Housden*,
186 F.R.D. 399 (E.D. Tex. 1999)......................................................................................17, 20

*Hampshire v. Port Arthur Indep. Sch. Dist.*,
No. 1:06-CV-235, 2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006)...........................22

*Harris v. Fee Transportation Servs., Inc.*,
No. Civ. A. 3:05CV0077-P, 2006 WL 1994586 (N.D. Tex. May 15, 2006) ..................16, 20

*Hoffman-LaRoche, Inc. v. Sperling*,
493 U.S. 165 (1989).............................................................................................................14

*Johnson v. Big Lots Stores, Inc.*,
561 F. Supp. 2d 567 (E.D. La. 2008)....................................................................................14

*Jones v. AbClean, Inc.*,
No. 1:08-CV-508, 2010 U.S. Dist. LEXIS 145462 (E.D. Tex. Feb. 8, 2010) ........................21

*Jones v. SuperMedia, Inc.*,
281 F.R.D. 282 (N.D. Tex. 2012) .........................................................................................23

*Kiln Underwriting LTD v. Jesuit High School of New Orleans*,
Nos. 06-04350, 06-05060, 2008 WL 4190991 (E.D. La. Aug. 27, 2008) ..............................23

*Lentz v. Spanky's Rest. II, Inc.*,
491 F. Supp. 2d 663 (N.D. Tex. 2007) .................................................................................17

*Lusardi v. Xerox Corp.*,
118 F.R.D. 351 (D.N.J. 1987).........................................................................................15, 17

*Marshall v. Eyemasters*,
272 F.R.D. 447 (N.D. Tex. 2011) .........................................................................................14

*Maynor v. Dow Chemical Co.*,
No. G-07- 0504 2008 WL 2220394 (S. D. Tex. May 28, 2008)..............................................24

*McKnight v. D. Houston, Inc.*,
756 F. Supp. 2d 794 (S.D. Tex. 2010) ..................................................................................17

*Mooney v. Aramco Servs. Co.*,
54 F.3d 1207, 1213-14 (5th Cir.1995), *overruled on other grounds*,................................15, 17

*Oliver v. Aegis Commc'ns Grp., Inc.*,
  No. 3:08-CV-828-K, 2008 WL 7483891 (N.D. Tex. Oct. 30, 2008) ....................................23

*Pfohl v. Farmers Ins. Grp.*,
  No. CV–03–3080, 2004 WL 554834 (C.D. Cal. Mar. 1, 2004) .............................................16

*Ray v. Motel 6 Operating Ltd.*,
  No. 3–95–828, 1996 WL 938231 (D. Minn. 1996) ..................................................................16

*Reid v. Timeless Restaurants, Inc.*,
  No. 3:09-CV-2481-L, 2010 WL 4627873 (N.D. Tex. Nov. 5, 2010)....................................23

*Richardson v. Wells Fargo Bank, N.A.*,
  No. 4:11-cv-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012) ..................................17

*Roebuck v. Hudson Valley Farms, Inc.*,
  239 F. Supp. 2d 234 (N.D.N.Y. 2002) ...................................................................................17

*Russell v. Ill. Bell Tel. Co.*,
  575 F. Supp. 2d 930 (N.D. Ill. 2008) .....................................................................................18

*Saleen v. Waste Mgmt., Inc.*,
  No. 08-4959, 2009 WL 1664451 (D. Minn. June 15, 2009)...........................................18, 19

*Salinas v. O'Reilly Automotive, Inc.*,
  No. 3: 04- CV-1861-B, 2005 WL 3783598 (N.D. Tex. Nov. 17, 2005)................................24

*Shadwick v. Silverleaf Resorts, et al*,
  No. 3:2013cv05153 (W.D. Mo. 2013)....................................................................................23

*Songer v. Dillon Res., Inc.*,
  569 F. Supp. 2d 703 (N.D. Tex. 2008) ..................................................................................17

*Valcho v. Dallas County Hosp. Dist.*,
  574 F. Supp. 2d 618 (N.D. Tex. 2008) ............................................................................17, 24

*Vogt v. Texas Instruments, Inc.*,
  No. 3:05-CV-2244-L, 2006 WL 4660134 (N.D. Tex. Sept. 19, 2006)..................................23

*Weissbrod v. Silverleaf Resorts, Inc.*,
   3:2009cv30149 (D. Mass 2009)............................................................................................23

*White v. Osmose, Inc.*,
  204 F.Supp.2d 1309 (M.D. Ala. 2002) ..................................................................................16

*Williams v. Rowell Invs., Inc.*,
  No. 3:14-CV-1469-P, 2015 U.S. Dist. LEXIS 181350 (N.D. Tex. May 15,
  2015) ......................................................................................................................................16

iv

**Statutes**

29 U.S.C. § 216(b) ....................................................................................................................14

DAL:948280.3

Defendants Silverleaf Resorts, Inc. ("Silverleaf"), Cerberus Capital Management, L.P. ("Cerberus"), SL Resort Holdings, Inc. ("SL Resort"), Orange Lake Country Club, Inc. ("Orange Lake"), and Orange Lake Holdings, LLLP ("OLH")[1] (together, "Defendants") hereby submit this Response to Plaintiffs' Motion for FLSA Conditional Certification ("Motion for Certification") and show the Court as follows:

## I.      <u>INTRODUCTION</u>

After engaging in discovery for 28 months, Plaintiffs − former Silverleaf employees who worked in various sales positions at three of the nine Silverleaf resorts − seek to conditionally certify a nationwide class consisting of potentially thousands of individuals based on individualized, conclusory, speculative, vague, and unfounded allegations that Defendants failed to pay them overtime and/or minimum wage, directed them to work off-the-clock, and/or forced them to falsify their time records.

The issue before the Court is whether (a) Plaintiffs have established the existence of a question about a common policy or plan and supplied evidence supporting a common answer that will uniformly resolve all claims of an identifiable class, or (b) Plaintiffs have merely alleged only anecdotal evidence from four former Silverleaf employees who have asserted potential individualized claims for overtime and/or minimum wage payments pursuant to the FLSA.  Although this case has been pending for more than 31 months,[2] Plaintiffs have asserted only individualized, anecdotal claims and have wholly failed to present any credible evidence supporting their class allegations or demonstrating the existence of any unlawful policy or plan applicable to all putative class members.

---

[1] Orange Lake and OLH will be collectively referred to herein as "Orange Lake."
[2] Plaintiffs filed suit against Silverleaf and Cerberus on March 13, 2014.  [Dkt. #1].

Moreover, SL Resort and Cerberus never employed Plaintiffs or any other individuals in a sales manager or sales representative position, and thus, they are improper subjects of the Motion for Certification, and Plaintiffs cannot credibly represent sales employees working for Orange Lake, who are subject to wholly different management, policies, and procedures. Further, Plaintiffs have presented absolutely no evidence demonstrating that any sales employees working for Orange Lake (as opposed to Silverleaf) should be included in such a class.  None of the Plaintiffs worked for Orange Lake or even alleged knowledge relating to Orange Lake policies or procedures with respect to timekeeping or compensation.

After 28 months of discovery, Plaintiffs have presented no credible evidence to show that Defendants engaged in any common unlawful policy or practice to deny Sales Representatives, Sales Managers, or Sampler Representatives (collectively, "Sales Employees") payment for all hours worked.  In contrast, Silverleaf's and Orange Lake's policies mandate payment for all time worked.  Plaintiffs' only "evidence" of such a nationwide policy or practice of denying payment for all hours worked takes the form of conclusory statements contained in four nearly identical declarations submitted by Plaintiffs and their own self-serving deposition testimony.  Plaintiffs vaguely allege in these declarations and their depositions that their supervisors instructed them not to record more than 40 hours per week; however, these allegations are contradicted by Plaintiffs' own verified time records, including the time records submitted by Plaintiffs in connection with their Motion, and by evidence from other putative class members who have never received such alleged instructions.  Plaintiffs simply offer no proof that such a uniform, nationwide policy or practice requiring sales employees to work off the clock exists.

Similarly, Plaintiffs submit only a few isolated time and pay records associated with three individuals to support their allegation that Defendants' compensation scheme systematically

DAL:948280.3

denied earned overtime to sales employees.  Aside from these few isolated records, Plaintiffs have not submitted any credible evidence to show that Defendants systematically denied payment of overtime to its sales employees.  Instead, these allegations are directly contradicted by Plaintiffs' pay records and credible evidence set forth by Defendants.

Finally, Plaintiffs have not presented a manageable, efficient trial plan.  To the contrary, if the Court certifies a class and issues notice, it will have to conduct individualized inquiries into the employment circumstances of each opt-in plaintiff to determine liability.  Because Plaintiffs have not set forth evidence to (i) establish any widespread policy or practice that violates the FLSA or (ii) demonstrate that other similarly situated individuals exist, the Court should deny conditional certification and decline to issue notice.

## II.        FACTUAL BACKGROUND

### A.        Silverleaf's Business and Relationship Amongst Defendants

Silverleaf marketed and sold vacation timeshares.  Declaration of Colter Mize ("Mize Decl.") ¶ 5 (App. 002-03).  In May 2011, SL Resort Holdings, Inc. ("SL Resort") purchased all of Silverleaf's stock and became the direct, whole owner of Silverleaf.  Declaration of Michael Thompson ("Thompson Decl.") ¶ 4 (App. 006).  SL Resort is an affiliate of Cerberus Capital Management, L.P. ("Cerberus").  Declaration of Sheila M. Peluso ("Peluso Decl.") ¶ 5 (App. 009).  Cerberus does not now have, nor has it ever had an ownership interest in Silverleaf.  *Id.* at ¶ 6 (App. 009).  In addition, neither Cerberus nor SL Resort has ever operated any timeshare resort or employed any individuals as sales representatives or sales managers.  *Id.* at ¶ 7-8 (App. 009); Thompson Decl. ¶ 4 (App. 006).

In May 2015, Orange Lake Holdings ("OLH") acquired Silverleaf from SL Resort. Declaration of Donna M. Hansen ("Hansen Decl.") ¶ 6 (App. 013).  Orange Lake Country Club is an affiliate of OLH.  *Id.* at ¶ 4 (App. 012).  Orange Lake manages and operates timeshare

resorts under the Holiday Inn Vacation Club brand. *Id.* at ¶ 5. (App. 012). Orange Lake employs sales staff at its Holiday Inn Vacation Club resort locations. *Id.* at ¶ 6 (App. 013). These employees are compensated by Orange Lake and are subject to Orange Lake policies and procedures. *Id.* at ¶ 6 (App. 013). Prior to its acquisition of Silverleaf, Orange Lake had no control over Silverleaf's operations, resorts, personnel, or policies. *Id.* at ¶ 8 (App. 013). In connection with Orange Lake's acquisition of Silverleaf, Silverleaf's operational management personnel changed and therefore implementation of Silverleaf's policies and procedures with respect to sales employees changed. Declaration of Jennifer McNabb ("McNabb Declaration") at ¶ 4 (App. 325).

**B.      Orange Lake Now Employs Sales Employees at Former Silverleaf Resorts**

Since Orange Lake's acquisition of Silverleaf, all of the Silverleaf resorts have been rebranded as Holiday Inn Vacation Club resorts. McNabb Declaration at ¶ 4 (App. 326). The Silverleaf resorts were rebranded as Holiday Inn Vacation Club resorts on the following dates:

> Fox River Resort – October 28, 2015
> Oak n' Spruce Resort – November 19, 2015
> Apple Mountain Resort – December 15, 2015
> Holiday Hills Resort – April 14, 2016
> Piney Shores Resort – April 14, 2016
> Orlando Breeze Resort – April 19, 2016
> Hill Country Resort – May 5, 2016
> The Villages Resort – May 5, 2016
> Seaside Resort – July 1, 2016.

*Id.* at ¶ 4 (App. 326). As part of the rebranding process, all of the Silverleaf sales employees at each resort were terminated by Silverleaf approximately two to four weeks prior to the resort's transition date ("Transition Date"), and most, if not all, were subsequently hired by Orange Lake. *Id.* at ¶ 5 (App. 326). Therefore, the sales employees previously employed at the former Silverleaf resorts, if rehired by Orange Lake, have been compensated by Orange Lake and subject to Orange Lake policies and procedures since their respective resort Transition Date.

McNabb Declaration at ¶ 5 (App. 326).  Presently, the sales staff at all former Silverleaf resorts are compensated by Orange Lake and subject to Orange Lake policies and procedures.  *Id.* at ¶ 5 (App. 326).  Orange Lake's compensation and timekeeping policies are wholly different than Silverleaf's policies.  *See* McNabb Decl. at ¶¶ 8-14, Exh. 1 and Exh. 2 (App. 327-328, 331-338, 339-342); Declaration of Christine Harding ("Harding Decl.") at ¶ 6-10, Exh. 11 (App. 17-18, 224-227).

### C.   Silverleaf's Resorts and Sales Employees were Unique in Important Ways

Some of the former Silverleaf Resorts operated with two different sales departments on site:  Outside Sales ("OS") and Member Services ("MS").  Declaration of Colter Mize ("Mize Decl.") at ¶ 5 (App. 002-03).  The OS Department dealt primarily with new customers who had not yet purchased any membership or other timeshare interest from Silverleaf.  Mize Decl. ¶ 6 (App. 003).  The MS Department, on the other hand, exclusively engaged with current Silverleaf owners who were looking to purchase additional or different ownership interests.  *Id.* at ¶ 6 (App. 003).  Each Sales Department was led by a Sales Director who oversaw the day-to-day operation of the sales employees in his or her department; therefore, the OS and MS groups at each Silverleaf location typically reported to different people who implemented different procedures.  *Id.* at ¶ 7 (App. 003).  Each Sales Director oversaw approximately 10-15 Sales Managers, 35-45 Sales Representatives, and 3-4 Sampler Representatives.  *Id.* at ¶ 7 (App. 003). The Sales Representatives were generally responsible for giving customers tours of the property, explaining the various levels of membership, and pitching the sale to the customer.  *Id.* at ¶ 8 (App. 003).  Sales Managers were generally responsible for closing the sale and then acting as an account manager for each sale they closed.  *Id.* at ¶ 8 (App. 003).  Sampler Representatives were typically the last people to interact with prospective customers who did not purchase a product from a Sales Manager.  *Id.* at ¶ 8 (App. 003).  Sampler Representatives offered the customer a

less expensive membership package in an effort to make some type of deal with the customer. *Id.* at ¶ 8 (App. 003).

Within each sales department at each of the nine resorts, the Sales Director was responsible for and had discretion in implementing Silverleaf's policies and procedures.  *Id.* at ¶ 9 (App. 004).  For example, at The Villages resort, OS Director Kate Phelps required each Sales Employee to complete paper time sheets in addition to clocking in and out electronically through the timekeeping system Dayforce.  *Id.* at ¶ 9 (App. 004).  In contrast, MS Director Cheryl Manker at the same resort did not require Sales Employees to complete paper time sheets, relying exclusively on time reported in Dayforce.  *Id.* at ¶ 9 (App. 004).

## D. <u>Silverleaf Correctly Compensated All Employees</u>

Silverleaf's Sales Employees were classified by Silverleaf as non-exempt employees and paid weekly on a draw versus commission basis.  Harding Decl. ¶ 6 (App. 017).  The draw amount was intended to cover an employee's minimum wage plus overtime for all hours worked. *Id.* at ¶ 6 (App. 017).  Prior to the Transition Dates, Sales Employees were compensated on a draw basis at a rate of $11 per hour.  *Id.* at ¶ 6 (App. 017).  This hourly rate has not always been consistent across all Silverleaf resorts, but it has always been above the federal and state minimum wage rate applicable at each Silverleaf location.  *Id.* at ¶ 6 (App. 017).

Sales Employees were primarily compensated based on commissions.  Harding Decl. ¶ 7 (App. 017-18).  The commission rates for each position varied based on location, type of sale, and down payment amount.  *Id.* at ¶ 7 (App 017-018).  Commissions earned were paid by Silverleaf three weeks after the date of sale to ensure sufficient time for the sale to be processed. *Id.* at ¶ 7 (App. 017-18).  If a Sales Employee's commission exceeded the amount of her draw, she would be paid the commission amount for that week.  *Id.* at ¶ 7 (App. 017-18).  If the employee earned some commission, but not enough to cover her draw for that week, she would

earn the amount of commission plus an additional amount of draw to ensure the employee was paid for all hours worked.  *Id.* at ¶ 7 (App. 017-18).

At the end of each month, in the last weekly payroll cycle, Silverleaf's payroll system re-analyzed its time and pay records for each Sales Employee for the prior month and re-calculated each employee's regular rate of pay for each week in the prior month to determine whether any Sales Employee was owed an additional amount for overtime and/or minimum wage.  Harding Decl. ¶ 8 (App. 018).  Silverleaf paid any additional overtime and/or other compensation owed to Sales Employees during the last weekly payroll cycle each month.  *Id.* at ¶ 8 (App. 018).  Silverleaf utilized the codes "365" and "315" to denote overtime payments in its payroll system.  *Id.* at ¶ 8 (App. 018).  The word "overtime" did not appear on the paycheck.  *See id.* at ¶ 2, Exs. 1-5 (App. 016, 021-83).

**E.**   **Orange Lake Compensates Sales Employees Differently than Silverleaf**

Orange Lake Sales Consultants are similar to Silverleaf's Sales Representatives. McNabb Decl. ¶ 7 (App. 327).  Orange Lake Latitudes Consultants are similar to Silverleaf's Sampler Representatives.  *Id.* at ¶ 7 (App. 327).  Orange Lake classifies Sales Consultants and Latitudes Consultants as non-exempt pursuant to the FLSA.  *Id.* at ¶ 7 (App. 327).  Orange Lake pays Sales Consultants weekly on a draw versus commission basis.  *Id.* at ¶ 8 (App. 327).  Sales Consultants receive a draw every week equal to their hourly rate times the number of hours worked, which is recoverable the following week based on the amount of commissions earned in such week.  *Id.* at ¶ 8 (App. 327).  Orange Lake pays Latitudes Consultants the greater of the amount owed based on their hourly rate or their earned commissions.  *Id.* at ¶ 9 (App. 327). Latitudes Consultants are not paid a draw.  *Id.* at ¶ 9 (App. 327).  Contrary to Silverleaf's compensation system, Orange Lake commissions are considered earned once a contract is complete, which means the contract documents have been executed, the rescission period has

expired, and all down payment money has been paid.  *Id*. at ¶ 8 (App. 327).  Orange Lakes pays commissions to Sales Consultants and Latitudes Consultants at the end of the week in which they are earned and computes overtime pay, if any, each week, including in such calculation each employee's commissions earned in that week for purposes of determining the employee's regular rate of pay.  *Id*. at ¶¶ 8, 10 (App. 327).

Sales Consultants and Latitudes Consultants are also eligible to receive monthly performance bonuses.  *Id*. at ¶ 11 (App. 327).  For weeks in which bonuses are paid, Orange Lake's payroll system re-analyzes its time and pay records for each Sales Consultant and Latitudes Consultant for the prior month and re-calculates each employee's regular rate of pay for each week in the prior month to determine whether any Sales Consultant or Latitudes Consultant is owed an additional amount for overtime and/or minimum wage based on his or her receipt of such bonus.  *Id*. at ¶ 11 (App. 327).  Orange Lake pays any additional overtime and/or other compensation owed to Sales Consultants and Latitudes Consultants during the weekly payroll in which bonuses are paid.  *Id*. at ¶ 11 (App. 327).

Orange Lake's Sales Managers are responsible for, among other things, supervising the Sales Consultants and Latitudes Consultants.  *Id*. at ¶ 14 (App. 328).  Orange Lake classifies its Sales Managers as exempt under the FLSA, and those employees do not clock in or out and are paid using an entirely different compensation structure.  *Id*. at ¶ 14 (App. 328).

**F.**      **Silverleaf and Orange Lake Expressly Prohibit Off-the-Clock Work**

Silverleaf expressly prohibited off-the-clock work.  Harding Decl. ¶ 9 (App. 018).  Silverleaf's Employee Handbook provided that "[n]on-exempt employees are required to record actual time worked including starting and ending time and time off for lunch … **[e]mployees should not work off the clock**."  *See id*. at ¶ 9, Ex. 11 (App. 018, 226-227) (emphasis added).  In addition, Silverleaf required employees to take care to "ensure that time records are

completely accurate," instructing that "[f]alsifying any time record or completing another employee's time record is strictly prohibited."  *Id.*

Silverleaf's Sales Employees were responsible for clocking in and out each day to record their hours worked.  Harding Decl. ¶ 10 (App. 018).  Sales Employees were trained by Silverleaf on how to properly record their time and were expected to clock in immediately upon arrival at the workplace and immediately before leaving.  Declaration of Adam Carroll ("Carrol Decl.") ¶¶ 5-6 (App. 231-232), Declaration of Michael Carter ("Carter Decl.") ¶ 6 (App. 235), Declaration of Ben Stoneberg ("Stoneberg Decl.") ¶ 9 (App. 240), Declaration of Thomas Tinsley ("Tinsley Decl.") ¶ 8 (App. 244-245).  Silverleaf required its sales employees to record all time worked, including time worked over 40 hours in a week.  Carroll Decl. ¶ 6 (App. 232), Carter Decl. ¶ 8 (App. 235), Stoneberg Decl. ¶ 12 (App. 240), Tinsley Decl. ¶ 10 (App. 245).  Sales Managers and Sales Directors trained Sales Representatives and Sampler Representatives on how to record their time properly and required that all employees clock in before beginning the work day.  Carroll Decl. ¶ 5 (App. 232), Carter Decl. ¶¶ 6-7 (App.  235), Stoneberg Decl. ¶¶ 9-10 (App. 240), Tinsley Decl.¶ 8  (App. 244-245).   Sales Employees were on-the-clock and fully compensated for time spent in training sessions or sales meetings.  Carroll Decl. ¶¶ 5-6 (App. 232), Carter Decl. ¶¶ 5-6 (App. 234-235), Stoneberg Decl. ¶¶ 6-8 (App. 239), Tinsley Decl.¶ 5 (App. 244).  Sales Managers were required to record all time spent making calls to new owners, and typically made those calls using a Silverleaf phone.  Stoneberg Decl. ¶ 5 (App. 239), Tinsley Decl. ¶ 7 (App. 244).  Sales Managers were compensated for the time those calls required.  *Id.*

Silverleaf's sales employees clocked in and out electronically using Dayforce.  Harding Decl. ¶ 10 (App. 018).  Prior to July 1, 2014, Sales Employees recorded their time manually using paper time sheets.  *Id.* at ¶ 10 (App. 018).  Sales Employees were required to sign their

DAL:948280.3

time sheets and verify that the information contained within the time sheet was entered in their own handwriting and was true and correct. *Id.* at ¶ 10 (App. 018).

Orange Lake also expressly prohibits off-the-clock work. McNabb Decl. ¶ 12, Exh. 1 (App. 328, 331-338). Orange Lake's Sales Consultants and Latitudes Consultants are responsible for clocking in and out each day using the electronic Kronos system to record their hours worked. *Id.* at ¶ 13 (App. 328). Sales Consultants and Latitudes Consultants must be clocked into the Kronos system in order to be eligible to be assigned to customer tours. *Id.* at ¶ 13 (App. 328). If a sales employee forgets to clock in or out, all sales department management personnel have missed punch/employee edit forms available for Sales Consultants and Latitudes Consultants to fill out and correct the mistaken or missed time entry. *Id.* at ¶ 13 (App. 328).

**G.   <u>Plaintiffs Worked in a Variety of Sales Positions and Regularly Recorded Hours Worked in Excess of 40 and Received Overtime Pay</u>**

Plaintiff Parker worked in the OS department at Silverleaf's Piney Shores Resort in Conroe, Texas. James Parker Deposition ("Parker Dep.") 23:20-25:2 (App. 251-253). At various times, Parker worked as a Sales Representative, Sampler Representative, and Sales Manager. Parker Dep. 20:25-21:5 (App. 249-250). Plaintiffs Owens and Jackson worked in the OS department at Silverleaf's Villages resort in Tyler, Texas. Zachary Owens Deposition ("Owens Dep.") 15:9-16:3 (App. 269-270); Taylor Jackson Deposition ("Jackson Dep.") 9:14-13:22 (App. 282-286). Owens worked as a Sales Representative and Sales Manager, and Jackson worked as a Tour Registration Clerk, Sales Representative, and Sales Manager. Owens Dep. 14:9-20 (App. 268); Jackson Dep. 9:14-16, 10:19-21, 12:13-15 (App. 282-283, 285). Plaintiff Collins worked in the OS department at Silverleaf's Villages Resort in Tyler, Texas and then transferred to Silverleaf's Fox River Resort in Illinois. Caitlin Collins Deposition ("Collins Dep.") 10:15-18, 12:4-6 (App. 298-299). Collins worked as a Sales Representative and a

Sampler Representative.   Collins Dep. 9:16-20 (App. 297).   Because Plaintiffs all worked at Silverleaf prior to July 1, 2014 when Dayforce was adopted and before the Transition Dates when Kronos was adopted, Plaintiffs all manually recorded their hours worked using paper timesheets and signed the time sheets verifying that the hours contained therein were true and correct.   *See* Harding Decl. ¶ 5, Exs. 6-10 (App. 017, 085-223).   Plaintiffs regularly recorded working more than 40 hours in a workweek.[3]   *See id.*   Although Plaintiffs claim that they never received overtime payments, Silverleaf's records clearly indicate that Silverleaf paid Plaintiffs overtime throughout their employment.   *See* Harding Decl. ¶ 4, Ex. 1-5 (App. 016-17, 022-083). All of the Plaintiffs testified that they did not know what the various payroll codes utilized by Silverleaf meant.   Jackson Dep. 90:14-18 (App. 288); Parker Dep. 106:14-23 (App. 257); Owens Dep. 48:9-18 (App. 271); Collins Dep. 77:21-78-5 (App. 302-303).

## H.   Plaintiffs Lack Knowledge of Practices Outside the Resorts and Time Periods in Which They Worked

Although their declarations contain contrary conclusory assertions, Plaintiffs' deposition testimony demonstrates that Plaintiffs have no knowledge of timekeeping or pay practices at resorts, or during time periods, other than those at which they worked.   Plaintiffs assert in their declarations personal knowledge of how many hours employees at other Silverleaf resorts worked, how these other employees were instructed to record their time worked, and how these other employees were paid**.**   *See* Dkt. 117-2, ¶ 10-12; Dkts. 117-3, 117-4, 117-5, ¶ 10-13. However, during their depositions, Plaintiffs admitted that they never witnessed or discussed these alleged issues with employees working at other resorts.   *See* Owens Dep. p. 55:14-17,

---

[3] Parker recorded more than 40 hours for 39% of the weeks he worked during the three years prior to filing his claim in this case.   *See* Harding Decl. ¶ 11 (App. 019).   Owens recorded more than 40 hours for 20 % of the weeks he worked during the three years prior to filing his claim.   *See id.* at ¶ 13 (App. 019).   Jackson recorded more than 40 hours for 21% of the weeks he worked during the three years prior to filing his claim.   *See id.* at ¶ 15 (App. 019). Collins recorded more than 40 hours for 48% of the weeks she worked during the three years prior to filing her claim.   *See id.* at ¶ 14 (App. 019).

77:13-18, 77:19-23, 77:24-78:5, 90:15-20 (App. 272-273, 275); Collins Dep. 117:22-118:1 (App. 304-305); Jackson Dep. 143:9-16 (App. 289); Parker Dep. 196:25-197:3 (App. 259-260).

## I.     **Other Putative Class Members Refute Plaintiffs' Claims**

In addition, other putative class members refute Plaintiffs' claims that they never received payment for overtime, were directed to work off-the-clock, and were instructed not to record more than 40 hours per week.  Sales employees at Silverleaf's Hill Country and The Villages resort testified that they were not instructed or encouraged to record inaccurate time, and they have no knowledge of time records being altered or filled in without their permission. Carroll Decl. ¶¶ 5-6 (App. 231-232), Carter Decl. ¶ 9 (App. 235), Stoneberg Decl. ¶ 13 (App. 240), Tinsley Decl. ¶ 11 (App. 245).  Sales employees at Silverleaf's Hill Country and The Villages resorts also stated that they have never been told that they would not be paid for hours worked, or that they would not be paid until their timesheet reflected fewer than 40 hours worked in the week.  Carter Decl. ¶ 10 (App. 236), Stoneberg Decl. ¶ 14 (App. 240), Tinsley Decl. ¶ 12 (App. 245).  Indeed, Plaintiffs' own pay records demonstrate they also received overtime pay. *See* Harding Decl. ¶ 4, Exs. 1-5 (App. 016, 021-83).  Other Silverleaf sales employees believe they have been properly compensated when they have worked more than 40 hours in a week. Carroll Decl. ¶ 6 (App. 232), Carter Decl. ¶ 8 (App. 235), Stoneberg Decl. ¶ 12 (App. 240), Tinsley Decl. ¶ 10 (App. 245).

## J.     **Extensive discovery has been completed in this case**

Extensive discovery has been completed in this case.  On July 2, 2014, more than 28 months ago, Plaintiffs commenced discovery and served Defendants with 20 Interrogatories, 26 Requests for Admissions, and 175 Requests for Production.  *See* Declaration of Micala R. Bernardo ("Bernardo Decl.") ¶ 4 (App. 311-312).  Defendants responded to each Interrogatory, Request for Production, and Request for Admission on August 18, 2014, and produced 3,313

pages of responsive documents. *Id.* at ¶ 9 (App. 311-312).  Defendants subsequently produced more than 3,000 documents in 2015 through supplemental production. *Id.* at ¶ 6 (App. 312).

Plaintiffs have responded to Defendants' Interrogatories and Defendants' Requests for Production of Documents and have produced a total of 267 pages of responsive documents. *Id.* at ¶ 4 (App. 311-312).  Defendants have also taken the depositions of James Parker, Zachary Owens, Taylor Jackson, and Caitlin Collins.[4] *Id.* at ¶ 4 (App. 312).  Plaintiffs chose not to depose corporate representatives of Silverleaf, SL Resort, or Cerberus, even after the Court ordered Defendants to produce the corporate representatives for depositions on or before October 21, 2016. *Id.* at ¶ 10 (App. 313).  Plaintiffs additionally have not requested depositions from any individuals associated with either Orange Lake entity. *Id.* at ¶ 10 (App. 313).  On October 21, 2016, Plaintiffs served additional discovery requests on Defendants which are largely duplicative of prior request served and responded to in August 2014. *Id.* at ¶ 11 (App. 313).  Discovery in this case is substantially complete, and the discovery deadline is currently set for November 21, 2016 (five days after Defendants file this Response). *Id.* at ¶ 12 (App. 313); *see also* Dkt. # 101. Therefore, no additional discovery is anticipated.

## III.        ARGUMENT AND AUTHORITIES

### A.        "Conditional Certification" Standards under the FLSA

The FLSA permits employees to bring an action "for and on behalf of himself or themselves and other employees similarly situated" provided other individuals participating in such action "gives his consent in writing to become such a party and such consent is filed."[5] The FLSA is silent, however, on the manner in which the court may participate in informing

---

[4] Defendants noticed the deposition of former named Plaintiff Aubree Hutchins twice before Plaintiffs' counsel informed Defendants' counsel that Hutchins was planning to withdraw his claims, which he subsequently did. Bernardo Decl. ¶ 4 (App. 311).

[5] 29 U.S.C. § 216(b).

others of the existence of the lawsuit.  The U.S. Supreme Court authorized district courts to facilitate notice to potential collective action members in *Hoffman-LaRoche, Inc. v. Sperling*.[6] *Hoffman* did not prescribe the timing, manner, or standards to be applied by district courts in facilitating this notice.  The Supreme Court observed, however, that Congress sought to make such actions "more lenient" by providing for the "opt in" requirement, and it "free[d] employers of the burden of representative actions" by mandating that class members affirmatively consent to join.  *Id.* at 173.

The Supreme Court has never considered the propriety of supposedly "lenient" or even "conditional" standards for facilitating notice in an FLSA action.  Instead, district courts are instructed to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to [ ... ] the Federal Rules of Civil Procedure."  *Id.* at 170.  Premature issuance of notice carries huge, potentially irreversible consequences.[7]

---

[6] 493 U.S. 165, 169 (1989).

[7] Courts should tread carefully before allowing even "conditional" certification of an FLSA lawsuit because while certification of a class may be "conditional" in the first stage, "notice" to the class is not.  This is particularly so when the notice sought is vast, like in this case.  Once notice is issued to potentially thousands of putative class members, this decision cannot be reversed even at the decertification stage.  Because an employee cannot be "de-noticed," the choice will be whether to continue to proceed collectively or unleash a multitude of individual claims resulting directly from the initial notice.  *See Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 587 (E.D. La. 2008) (late-stage decertification of FLSA collective action class precipitated the filing of 212 individual claims from the decertified 936 plaintiffs who opted in); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) ("It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.").  Likewise here, the Court need not wait until unknown numbers of people have joined the suit, years have passed, and hundreds of thousands (or millions) of dollars have been spent in discovery to ultimately conclude that Plaintiffs' collective trial plan simply is not workable or warranted.  *See Marshall v. Eyemasters*, 272 F.R.D. 447, 450 (N.D. Tex. 2011) (denying conditional certification where "an individual fact-finding will be necessary for each of the named plaintiffs to determine if FLSA violations occurred [ ... There] is no reason why the addition of 'hundreds of employees,' would require anything different"); *see also, D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (denying conditional certification and observing that "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense").

**B.**     **The Court Should Apply a Heightened Standard in This Case Because the Parties Have Substantially Completed Discovery**

Although the Fifth Circuit has not adopted a specific test to determine whether notice should be issued to potential members of a collective action, Plaintiffs rely exclusively on the method set forth in *Lusardi* in seeking conditional certification.[8] *See* Plaintiffs' Motion, pp. 8-9. The *Lusardi* approach involves a two-step analysis of class certification.[9] The two-stage process consists of a "notice" stage followed later by a "decertification" stage.[10] Under *Lusardi*, the Court makes an initial inquiry into whether Plaintiffs have provided sufficient evidence that similarly situated claimants exist.[11] If the Court conditionally certifies a class, the case proceeds as a collective action during discovery.[12] At the second stage of the analysis, the defendant may move to "decertify" the conditionally certified class.[13] The court must then determine whether the employees are similarly situated, and, if so, the collective action may proceed.[14] However, if the court finds that the employees are not similarly situated, the opt-in plaintiffs are dismissed without prejudice, and only the original plaintiffs may proceed with their claims.[15]

Plaintiffs focus their inquiry solely utilizing the *Lusardi* approach, which has been characterized as "lenient," although not automatic.[16] Plaintiffs spend a significant portion of their brief arguing that the court should conditionally certify this class because the burden at the notice stage is "lenient." However, where the parties have had the opportunity to conduct

---

[8] Courts in the Fifth Circuit generally recognize two methods for determining whether to authorize notice to similarly situated employees: the spurious class action *Shushan* approach, or the two-step *Lusardi* approach.[8] However, the Fifth Circuit has not determined which method is more appropriate. *See Mooney*, 54 F.3d at 1216.

[9] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987).

[10] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir.1995), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 91 (2003).

[11] *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 604 (S.D. Tex. 2005).

[12] *Aguirre v. SBC Commc'ns, Inc.*, No. Civ. A. H–05–3198, 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006) (citing *Mooney*, 54 F.3d at 1214).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Castillo v. Hernandez*, No. EP–10–CV–247–KC, 2010 WL 4595811 at *4 (W.D. Tex. Nov. 4, 2010).

discovery on the issue of certification, particularly in a case like this where the discovery is significant and discovery will close prior to any decision on Plaintiffs' Motion for Certification, the similarly situated inquiry is more stringent.[17] Courts generally consider the totality of evidence submitted by both parties, and the two-step inquiry collapses into one.[18]

In the present case, substantial discovery has already been completed.[19] Indeed, discovery has been ongoing for more than 28 months, and the discovery period is set to expire on November 21, 2016, less than a week after Defendants file this Response. In essence, discovery in this case is largely complete, and certainly further along than other cases in which courts have decided to apply the second, more stringent analysis in deciding whether to certify a collective action.[20] Thus, the Court should apply a heightened, more stringent review of the Motion for Certification motion, and require a more substantial showing than the conclusory, threadbare allegations advanced by Plaintiffs.

---

[17] *Williams v. Rowell Invs., Inc.*, No. 3:14-CV-1469-P, 2015 U.S. Dist. LEXIS 181350 at *3 (N.D. Tex. May 15, 2015); *see also Basco v. Wal–Mart Stores, Inc.,* No. 00–3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004).

[18] *Id.* ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify."); *see also Boyd v. Schwebel Baking Co.*, No. 4:15-cv-871, 2016 U.S. Dist. LEXIS 85378 at *12 (N.D. Ohio June 30, 2016) (courts generally agree that allowing the parties to conduct some targeted discovery regarding the conditional certification question takes the question beyond the stage one evidentiary boundaries of the complaint's allegations and supporting affidavits); *Blake v. Hewlett-Packard Co.*, No. 4:11-CV-592, 2013 U.S. Dist. LEXIS 98690 at *15-16 (S.D. Tex. July 11, 2013) (finding that where the parties engaged in at least five months of discovery, had the opportunity to depose witnesses, and reviewed thousands of pages of documents, Plaintiffs were required to support their motion with more than minimal evidence); *Pfohl v. Farmers Ins. Grp.,* No. CV–03–3080, 2004 WL 554834, at *3 (C.D. Cal. Mar. 1, 2004) (finding that where discovery relating to the issues of certification had been undertaken, the court could proceed to the second stage of the analysis and weigh the relevant factors to determine whether plaintiffs were similarly situated); *White v. Osmose, Inc.,* 204 F.Supp.2d 1309, 1313 n.2 (M.D. Ala. 2002) (finding it appropriate to consider the evidence submitted by the parties when discovery had been conducted); *Ray v. Motel 6 Operating Ltd.,* No. 3–95–828, 1996 WL 938231, at *4 (D. Minn. 1996) (applying a more stringent standard at the initial stage because "the facts before the Court are extensive [and] there is no need for discovery in order to reach a determination").

[19] Defendants have responded to interrogatories, requests for admission, and 175 requests for production of documents. In response to Plaintiffs' document requests, Defendant has produced 6,648 pages of responsive documents. Plaintiffs have also responded to interrogatories and requests for production, and have produced 267 pages of responsive documents. Defendants have taken the depositions of the four Plaintiffs who are continuing to pursue their claims in this lawsuit.

[20] *See, e.g., Harris v. Fee Transportation Servs., Inc.*, No. Civ. A. 3:05CV0077-P, 2006 WL 1994586, at *3 (N.D. Tex. May 15, 2006) (J. Solis) (applying second stage analysis when parties had conducted more than 7 months of discovery relating to certification issue); *see also Brooks v. Bellsouth Telecomm., Inc.,* 164 F.R.D. 561, 568–69 (N.D. Ala.1995) (finding a three-month period for discovery extensive enough to prompt second stage analysis).

C.    **Plaintiff's Motion Nevertheless Fails Even Under the *Lusardi* Approach**

Even if the Court declines to apply a heightened standard of review to the Motion for Certification, Plaintiffs still cannot meet their burden to obtain conditional certification under the *Lusardi* framework.   Under *Lusardi*, a named plaintiff must "make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[21]   However, certification is not always appropriate, and requires "substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.'"[22]

1.    Plaintiffs have not established that they are similarly situated to putative class members with respect to a common unlawful policy, practice, or plan.

If there is no generally applicable unlawful decision, policy, or plan, just Plaintiffs' personal circumstances, conditional certification should be denied.[23]   "Although written policies are not dispositive that an actual plan or practice exists, written policies are relevant considerations when assessing workers' arguments about the existence of a company-wide policy."  *Id.* at *4.  Here, both Silverleaf's and Orange Lake's written policies clearly mandate

---

[21] *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010).

[22] *Id.*  To determine whether the requisite showing has been made, courts look to the similarity of job requirements and pay provisions and at whether the putative class members appear to be possible victims of a common policy or plan.  *See Butler v. City of San Antonio*, No. SA-03-CA-170-RF, 2003 WL 22097250, at * 1 (W.D. Tex. Aug. 21, 2003); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002).  Courts also consider whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted.  *See H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999).  Although the burden is characterized as "fairly lenient," it is not invisible.  *See Mooney*, 54 F.3d at 1214; *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706 (N.D. Tex. 2008).  To this end, conditional certification is not automatic.  *Badgett v. Texas Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at *2, n.6 (S.D. Tex. Oct. 12, 2006) (stating that of the 115 FLSA actions filed in that district in 2005 purporting to be collective actions, only 17 were certified as such).  Indeed, courts have the responsibility to avoid the "stirring up" of litigation through unwarranted solicitation.  *See Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008) (stating that courts should refrain from stirring up unwarranted litigation).  "Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense."  *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007).

[23] *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012).

payment for all time worked and require accurate recording of all hours worked.  Further, the evidence demonstrates that Silverleaf's Sales Employees were specifically trained regarding how to properly record their time.  Carroll Dec. ¶ 6 (App. 232), Carter Dec. ¶¶ 6-7 (App. 235), Stoneberg Dec. ¶¶ 4, 9-11(App. 238, 240), Tinsley Dec. ¶¶ 8-9 (App. 244-245).  Given that Silverleaf has written policies prohibiting off-the-clock work, Plaintiffs must present countervailing evidence of a plan implemented by Silverleaf nationwide to violate its lawful written policies.[24]  Plaintiffs have failed to meet this burden.

The only evidence Plaintiffs cite in the Motion for Certification to support the fact that the alleged unlawful practices extend beyond Plaintiffs' own individualized experiences takes the form of Plaintiffs' conclusory, self-serving declarations.  *See* Pl.'s Mot. p. 2 (citing Pl.'s App. pp. 42-48).  Contrary to the conclusory statements in Plaintiffs' declarations, Plaintiffs' deposition testimony limits their allegations of alleged instructions to record no more than 40 hours in a workweek to specific supervisors.  *See, e.g.*, Parker Dep. 65:8-11, 53:23-54:3 (App. 256, 254-255); Jackson Dep. 32:3-21 (App. 287); Collins Dep. 43:25-44:10 (App. 300-301).  When policies or practices are implemented in a decentralized fashion by individual managers, and determining liability would require individualized inquiries into each opt-in plaintiff's location, supervisor, and employment circumstances, conditional certification is inappropriate.[25]

Here, Silverleaf's policy was lawful, and the unlawful practices alleged by the Plaintiffs, if true, would violate these written policies.  Thus, the same individualized issues that plagued

---

[24] *See Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008).

[25] *See, e.g., Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592-FWD-DSC, 2011 WL 4351631, at *10-11 (W.D.N.C. Sept. 16, 2011) (denying employees' motion to conditionally certify class of nurses who alleged they were not compensated for work performed during meal breaks and stating that "ultimately, the substantive question of whether each Plaintiff or putative class member may recover under the FLSA is an individualized, fact-intensive inquiry."); *Saleen v. Waste Mgmt., Inc.*, No. 08-4959, 2009 WL 1664451, at *6 (D. Minn. June 15, 2009) (denying certification of nationwide class of waste management employees who were subject to automatic meal deduction policy partially because "[w]here the collective action requires such significant individual considerations, "it may be inappropriate for conditional certification.").

the putative classes in *Blaney* and *Saleen* also predominate here and make this an improper representative action because it is unmanageable.  In order to evaluate liability for each putative class member, this Court will have to determine: whether each putative class member was employed by Silverleaf or Orange Lake, and which policies governed their employment; the practice implemented by the Sales Director in each sales department at each resort; the method in which each putative class member recorded his or her time; whether each putative class member performed any compensable work off-the-clock; whether each Sales Director directed each putative class member to improperly record her hours worked; and whether each putative class member was compensated for hours recorded over 40 in a workweek.  The differences in the outcome of this case may be dependent on which Plaintiff's or opt-in plaintiff's employment circumstances are analyzed.  As these questions cannot be answered on a representative basis, the class is not similarly situated.  There is simply no evidence of a common policy or practice to force Sales Employees to work off-the-clock and/or mandate falsification of time records.

2.     Plaintiffs have not shown a systematic policy or plan to deny overtime or minimum wage to sales employees.

Plaintiffs attempt to establish a nationwide, systematic policy or plan to deny overtime and minimum wages by relying on a few isolated pay and time records.  *See* Plaintiffs' Motion, Exhs. 12-19.  Importantly, **none** of Plaintiffs' evidence relates to Defendants SL Resort or Cerberus, entities that never employed Plaintiffs or any other individuals as sales representatives or sales managers and thus are improper subjects of the Motion for Certification.  In addition, Plaintiffs have presented no evidence relating to any unlawful practices taken by Orange Lake.  However, even as to Silverleaf, these allegations are directly contradicted by the overwhelming majority of Plaintiffs' pay and time records, which show that Silverleaf properly and accurately paid Plaintiffs for overtime worked.  Plaintiffs offer no additional evidence to support this

theory.   Courts routinely deny certification based on such conclusory, threadbare evidence, particularly after the amount of discovery that has taken place in this case.[26]   The evidence demonstrates a policy requiring employees to properly record their time and a practice of paying overtime.   In fact, the evidence shows that Plaintiffs regularly recorded more than 40 hours and were paid for the overtime they worked.   Harding Decl. ¶¶ 4-5, Exs. 1-10 (App. 017, 085-223).

> 3.   Plaintiffs have not shown that they are similarly situated to other putative class members.

Plaintiffs were not employed by any Defendant during the applicable statute of limitations period that would apply to any putative class member who might opt into this suit. Further, Plaintiffs' vague class definition purportedly encompasses all non-exempt "sales employees" of Defendants, who worked on-site at Defendants' resort properties and were paid on a commission-only basis without any provision for minimum wages or overtime compensation.   This overly broad definition of people includes individuals who work or have worked for Orange Lake and were governed by entirely separate policies and procedures. Plaintiffs have offered no evidence to support including such individuals in this lawsuit. Plaintiffs' overly broad class definition also includes individuals who worked in different sales departments, at different resorts across the nation, for different supervisors than those who managed Plaintiffs and allegedly instructed them to work off-the-clock and/or falsify their time records.   The putative class also includes individuals utilizing three different timekeeping methods and individuals working for both MS and OS departments, even though those two departments have varying job duties and are typically managed by different directors.   Further, the vaguely defined term "sales employee" could include employees who worked on-site at

---

[26] *See, e.g. Harris*, 2006 WL 1994586, at *3 (J. Solis) (denying certification when only evidence of any alleged violation was from Plaintiffs' conclusory declarations); *H & R Block*, 186 F.R.D. at 400 (denying certification when the only evidence presented by the plaintiffs consisted of conclusory allegations).

Silverleaf resorts and performed job duties that are not even remotely similar to those performed by Plaintiffs, including individuals working in the contracts, gifting, or hospitality departments.

4.     <u>Plaintiffs' own time and pay records refute their claims.</u>

Plaintiffs' own time and pay records contradict their claims. For example, Plaintiffs claim in their declarations that "[l]ike other salespersons at Silverleaf, [they were] told by [their] managers that [they] could not receive [their] weekly paycheck until after [they] submitted a handwritten timesheet for the week in which [they] recorded no more than 40 hours of work time" and that "[they] were all subject to the same policy which prohibited recording any overtime on [their] timesheets." Dkt. 117, Exhs. 2-5, ¶¶ 12-13. However, Plaintiffs' timesheets clearly demonstrate that Plaintiffs regularly recorded more than 40 hours in a workweek, and pay records reflect overtime payments for such overtime hours. Harding Decl. ¶ 4, 5, Exs. 1-10 (App. 016, 021-223). Such records clearly belie Plaintiffs' theory that a common policy or plan exists preventing employees from recording more than 40 hours in a workweek.

In addition, Plaintiffs assert in their declarations that "none of Silverleaf's salespersons were paid overtime." Dkts. 117-3 and 117-4 ¶ 13, 117-5, ¶ 12. However, Silverleaf's records indicate that each Plaintiff received several overtime payments during his or her employment. Harding Decl. ¶ 4, Exs. 1-5 (App. 016, 021-083).

5.     <u>Plaintiffs have presented no evidence that other putative class members are interested in joining this lawsuit.</u>

"[A] plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit."[27] Thus, before proceeding as a collective action, Plaintiffs must show that others wish to opt into

---

[27] *Jones v. AbClean, Inc.*, No. 1:08-CV-508, 2010 U.S. Dist. LEXIS 145462, at *14 (E.D. Tex. Feb. 8, 2010) (internal quotation omitted).

the lawsuit.[28]  Tellingly, since Plaintiffs filed this suit in March 2014, nobody has opted into this lawsuit, and in fact one of the names Plaintiffs nonsuited his claims.[29]  Although Plaintiffs summarily state in their declarations that "[t]here are other salespersons at Silverleaf who would be interested in joining this lawsuit if they were given notice of their rights and opportunity to join," Plaintiffs have not presented any admissible evidence to support this statement.  Plaintiffs also state in their declarations that they "have spoken with other Silverleaf employees who have expressed interest in joining this case," but they fail to identify a single such employee.  Further, this statement directly contradicts the deposition testimony of Parker, Owens, Collins, and Jackson, who testified during their depositions that they have not spoken to any current or former Silverleaf employees about this lawsuit.  Parker Dep. 192:5-7 (App. 258); Collins Dep. 128:16-20 (App. 307); Owens Dep. 90:9-14 (App. 275); Jackson Dep. 153:10-16 (App. 306).  Even Collins' fiancé, former Silverleaf Sales Manager and putative class member Josie Buchanan, has not opted into this lawsuit.  Collins Dep. 123:3-5 (App. 306).  Here, Plaintiffs have _lost_ class members, which is an additional factor weighing against certification.

> 6.  Plaintiffs' characterization of Silverleaf as a "repeat offender" is a red herring.

Plaintiffs allege that Silverleaf is a "repeat offender" because it was involved in a prior Department of Labor investigation and has settled prior lawsuits involving allegations of failure to pay overtime.  Pl.'s Motion p. 1-2.  However, Plaintiffs fail to note that the Department of Labor, in conjunction with concluding its investigation of Silverleaf, approved Silverleaf's method of compensating its sales employees.  *See* Department of Labor Disposition (App. 322).  Further, two of the cases cited by Plaintiffs occurred prior to the DOL investigation, and well

---

[28] *Hampshire v. Port Arthur Indep. Sch. Dist.*, No. 1:06-CV-235, 2006 U.S. Dist. LEXIS 88874, at *4 (E.D. Tex. Dec. 7, 2006).

[29] *See* Dkt. # 75.

before the beginning of the applicable statute of limitations period.[30]   The other case cited by Plaintiffs – the *Shadwick* matter – involved 4 state law claims entirely unrelated to the FLSA in addition to employees who were employed by an entirely different entity (Silverleaf Club) and a wholly separate category of employees who were not paid on a commission basis and are not similarly situated to Plaintiffs.[31]   Moreover, evidence that claims were satisfactorily resolved through a confidential settlement is not evidence of wrongdoing.[32]

## D.      Case law cited by Plaintiffs is clearly distinguishable

Plaintiffs argue in the Motion for Certification that district courts in the Fifth Circuit routinely certify similar off-the-clock cases.  Pl.'s Mot. at pp. 17-20.  However, the facts of this case are distinguishable from nearly all of the cases on which Plaintiffs rely because, unlike many of those cases, more than minimal evidence is available for the court's consideration at this stage of the litigation.   Notably, the majority of cases Plaintiffs cite in the Motion for Certification had not even reached the discovery phase when the courts considered whether to grant conditional certification.[33]

---

[30]   *Gregory v. Silverleaf Resorts, Inc.*, No. 1:2007cv03131 (N.D. Ga. 2007) ; *Weissbrod v. Silverleaf Resorts, Inc.*, 3:2009cv30149 (D. Mass 2009).

[31]   *Shadwick v. Silverleaf Resorts, et al,* No. 3:2013cv05153 (W.D. Mo. 2013).

[32]   *See Kiln Underwriting LTD v. Jesuit High School of New Orleans*, Nos. 06-04350, 06-05060, 2008 WL 4190991, at *7 (E.D. La. Aug. 27, 2008) (noting that "federal courts recognize that settlement agreements are inadmissible to prove liability").

[33]   *See Aguayo v. Bassam Odeh, Inc.*, No. 3:13-CV-2951-B, 2014 WL 737314, at *5 (N.D. Tex. Feb. 26, 2014) (finding that plaintiffs satisfied their burden for conditional certification at the notice stage where declarations were submitted, but no discovery had occurred); *Jones v. SuperMedia, Inc.*, 281 F.R.D. 282, 292 (N.D. Tex. 2012) (granting Motion to Certify where plaintiffs submitted four declarations at the stage of filing an Amended Complaint);   *Reid v. Timeless Restaurants, Inc.*, No. 3:09-CV-2481-L, 2010 WL 4627873, at *3 (N.D. Tex. Nov. 5, 2010) (granting in part and denying in part plaintiffs' Motion for Conditional Certification, and granting Plaintiffs' request for expedited discovery); *Oliver v. Aegis Commc'ns Grp., Inc.*, No. 3:08-CV-828-K, 2008 WL 7483891, at *4 (N.D. Tex. Oct. 30, 2008) (granting conditional certification at the notice stage where plaintiffs submitted numerous declarations of potential plaintiffs who wished to join the suit, but discovery had not occurred); *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 606 (S. D. Tex. 2005) (granting conditional certification based on the pleadings where no discovery had taken place; noting that the notice stage is lenient where little, if any, discovery has taken place; ordering plaintiff to submit a proposed order granting discovery); *Vogt v. Texas Instruments, Inc.*, No. 3:05-CV-2244-L, 2006 WL 4660134, at *3 (N.D. Tex. Sept. 19, 2006) (conditionally certifying a class where defendant did not contest to the certification and discovery had not

Moreover, the cases Plaintiffs cite in their Motion in which discovery had indeed taken place support Defendants' contention that the lenient notice standard is inappropriate in this case. For example, in the *Valcho* case, the court denied Valcho's conditional certification motion because Valcho failed to develop a factual basis for a collective action, despite having had the opportunity to do so.[34]   The court rejected Valcho's attempt to rely exclusively on the allegations of her personal declaration without any supporting evidence, and clarified that "the court has less cause for leniency during the 'notice' phase of the analysis where a plaintiff has already conducted discovery on the certification issue."[35]   The court noted that because Valcho had the benefit of three months of discovery, the court had a reasonable expectation that she would be able to produce evidentiary support beyond the bare allegations contained in her complaint and personal declaration.[36]   In denying the motion, the court also considered that Valcho failed to refute the defendant's evidence of a policy for compensating extra work performed.[37]

Similarly, in the *Salinas* case, the court denied conditional certification due to Salinas' failure to avail herself of the opportunity to provide sufficient evidence to the court following a period of *limited* discovery.[38]   The court further pointed out that the defendant had offered Salinas the opportunity to take the deposition of ten individuals and she had failed to do so.[39]

Finally, Plaintiffs' reliance on *Gonzales* for the proposition that the lenient notice standard must be applied even if discovery has commenced is misplaced.[40]   *Gonzales* is distinguishable from this case because the parties had only conducted "some" written discovery

---

taken place); *Maynor v. Dow Chemical Co.*, No. G-07- 0504 2008 WL 2220394 at *6 (S. D. Tex. May 28, 2008) (finding the case was at the notice stage because the parties had minimal evidence in the form of affidavits).
[34] *Valcho v. Dall. Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 623-624 (N.D. Tex. 2008).
[35] *Id*. at 623.
[36] *Id.* at 622.
[37] *Id.* at 623.
[38] *Salinas v. O'Reilly Automotive, Inc.*, No. 3: 04- CV-1861-B, 2005 WL 3783598, at *9 (N.D. Tex. Nov. 17, 2005).
[39] *Id.*
[40] *Gonzalez v. Ridgewood Landscaping, Inc.*, No. H-09-2992, 2010 WL 1903602 (S.D. Tex. May 10, 2010)

prior to moving for conditional certification.[41]   The court noted, however, that a more onerous standard should apply "after discovery is largely complete and the matter is ready for trial."[42] This case represents exactly the type of case the court in *Gonzales* contemplated for imposing the more onerous standard since discovery is largely complete.

Plaintiffs' Motion for Certification invites the Court to ignore that the parties have engaged in extensive discovery in this case, and that Plaintiffs have failed to develop a factual basis for a collection action, despite that fact.   The Court should decline to grant Plaintiffs' Motion for Certification accordingly.

## IV.      <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Motion for FLSA Conditional Certification and grant Defendants such further relief to which they may be justly entitled.   In the alternative, if the Court grants Plaintiffs' Motion for Certification and determines that issuance of notice is appropriate, Defendants request that the parties have an opportunity to confer regarding the contents of the notice.

---

[41] *Id.* at *5.
[42] *Id.*

DAL:948280.3

Respectfully submitted,

/s/ *Isabel A. Crosby*
Marc D. Katz
State Bar No. 00791002
marckatz@andrewskurth.com
Isabel Andrade Crosby
State Bar No. 24050226
isabelcrosby@andrewskurth.com
Micala R. Bernardo
State Bar No. 24061108
micalabernardo@andrewskurt.com

Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659 4400
Facsimile:   (214) 659 4401

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

On November 16th, 2016, the undersigned counsel electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Isabel A. Crosby*
Isabel A. Crosby