IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES PARKER, CAITLIN COLLINS, TAYLOR JACKSON, and ZACHARY OWENS, on behalf themselves and others similarly situated, | § § § § § | Civil Action No. 3:14-CV-02075-P COLLECTIVE ACTION |
| Plaintiffs, | § § | |
| v. | § § | |
| SILVERLEAF RESORTS, INC., CERBERUS CAPITAL MANAGEMENT L.P., SL RESORT HOLDINGS, INC., ORANGE LAKE COUNTRY CLUB, INC. and ORANGE LAKE HOLDINGS, LLLP | § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSED MOTION TO STRIKE DECLARATIONS FILED IN SUPPORT OF PLAINTIFFS' MOTION FOR FLSA CONDITIONAL CERTIFICATION**

Marc D. Katz
State Bar No. 00791002
marckatz@andrewskurth.com
Isabel Andrade Crosby
State Bar No. 24050226
isabelcrosby@andrewskurth.com
Micala Bernardo
State Bar No. 24061108
micalabernardo@andrewskurth.com

Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659 4400
Facsimile:  (214) 659 4401

**ATTORNEYS FOR DEFENDANTS**

i

**TABLE OF CONTENTS**

I.   BACKGROUND ................................................................................................................. 1

II.  PLAINTIFFS MUST PROVIDE ADMISSIBLE EVIDENCE AT THE CONDITIONAL CERTIFICATION STAGE. ................................................................................................. 2

III. THE PARKER, COLLINS, JACKSON, AND OWENS DECLARATIONS FAIL THESE EVIDENTIARY REQUIREMENTS AND SHOULD BE STRICKEN BY THE COURT. 3

IV.  EVEN IF THE COURT DOES NOT STRIKE PLAINTIFFS' DECLARATIONS, IT SHOULD AFFORD THEM NO WEIGHT. .......................................................................... 8

V.   CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clark v. City of Fort Worth*,
   800 F. Supp. 2d 776 (N.D. Tex. 2011) .................................................................................2

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................................7

*Desert Sun Net LLC v. Kepler*,
   2006 WL 3091170 (W.D. Wash. Oct. 27, 2006) ..................................................................3

*H & R Block, Ltd. V. Housden*,
   186 F.R.D. 399 (E.D. Tex. 1999).........................................................................................2

*Hampshire v. Port Arthur Indep. Sch. Dist.*,
   2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006)......................................................3

*Jones v. SuperMedia, Inc.*,
   281 F.R.D. 282 (N.D. Tex. 2012) .........................................................................................2

*Khan v. Cougar Shop, Inc.*,
   2007 WL 2777774 (S.D. Tex. Sept. 21, 2007) .....................................................................3

*Lee v. Metrocare Svcs.*,
   980 F. Supp. 2d 754 (N.D. Tex. 2013) .................................................................................7

*Lentz v. Spanky's Rest. II, Inc.*,
   491 F. Supp. 2d 663 (N.D. Tex. 2007) .................................................................................2

*Lujan v. Cabana Mgmt., Inc.*,
   284 F.R.D. 50 (E.D.N.Y. 2012)............................................................................................7

*Marshall v. Eyemasters of Texas, Ltd.*,
   272 F.R.D. 447 (N.D. Tex. 2011) .........................................................................................7

*Rosales v. El Rancho Farms*,
   2011 WL 6153212 (E.D. Cal. Dec. 12, 2011) ......................................................................7

*Ryan v. Staff Care Inc.*,
   497 F. Supp 2d. 820 (N.D. Tex. 2007) .................................................................................2

*Simmons v. T-Mobile, USA*,
   2007 WL 210008 (S.D. Tex. Jan. 24, 2007) .........................................................................3

*Songer v. Dillon Resources, Inc.*,
   569 F. Supp. 2d 703,706 (N. D. Tex. 2008) ............................................................................2

*Stiles v. FFE Transp. Servs., Inc.*,
   2010 WL 935469 (N.D. Tex. March 15, 2010) ...................................................................2, 3

*Tice v. AOC Senior Home Health Corp.*,
   826 F. Supp. 2d 990 (E.D. Tex. 2011) ....................................................................................7

*In re Wells Fargo*,
   2012 WL 330880 (S.D. Tex. Aug. 10, 2012) ..........................................................................2

*Wombles v. Title Max of Alabama, Inc.*,
   2005 WL 3312670 (M.D. Ala. Dec. 7, 2005) .........................................................................3

**Statutes**

Fair Labor Standards Act ................................................................................................................1

Defendants Silverleaf Resorts, Inc., Cerberus Capital Management, L.P., SL Resort Holdings, Inc., Orange Lake Country Club, Inc., and Orange Lake Holdings, LLLP (collectively, "Defendants") hereby submit this Motion to Strike Declarations Filed in Support of Plaintiffs' Motion for FLSA Conditional Certification ("Motion to Strike"). Defendants move to strike the Declarations of James Parker, Caitlin Collins, Taylor Jackson, and Zachary Owens in their entirety, or, at a minimum, those portions of such declarations that are specifically objectionable as shown below.

**I.    BACKGROUND**

On September 30, 2016, Plaintiffs moved, pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), for conditional certification of this case as a collective action ("Original Motion").[1] In their Original Motion, Plaintiffs argued that a class of similarly situated individuals exists, consisting of individuals who have worked or presently work for Defendants as "sales employees."[2] In support of their Original Motion, Plaintiffs attached the declarations of four Plaintiffs –James Parker, Caitlin Collins, Taylor Jackson, and Zachary Owens.[3] The Court denied Plaintiffs' Original Motion without prejudice,[4] and Plaintiffs filed a renewed Motion for Certification on October 26, 2016.[5] Plaintiffs again attached updated, although substantially identical, declarations from Parker, Collins, Jackson, and Owens in support of their Motion for Certification. These declarations are identical, boilerplate, rubber-stamped documents that directly contradict Plaintiffs' sworn deposition testimony. Further, large portions of these declarations are unsupported by the declarants' personal knowledge; are vague, speculative, and

---

[1] Plaintiffs' Motion for FLSA Conditional Certification and Request for Issuance of Notice ("Original Motion"), September 30, 2015, Dkt. No. 74, pp. 1-2.
[2] Original Motion, p. 2
[3] *Id.* at Ex. 2-5.
[4] Dkt. No. 100.
[5] Plaintiffs' Motion for FLSA Conditional Certification ("Motion for Conditional Certification"), October 26, 2016, Dkt. No. 116, pp. 1-2.

1

conclusory; lack foundation or personal knowledge; present improper opinion testimony; or are based on hearsay statements. The Court should strike the declarations accordingly.

## II.  PLAINTIFFS MUST PROVIDE ADMISSIBLE EVIDENCE AT THE CONDITIONAL CERTIFICATION STAGE

In an FLSA collective action, courts in the Fifth Circuit typically utilize the two-step *Lusardi* approach to determining whether an FLSA lawsuit should proceed as a collective action.[6] However, where, as here, the parties have conducted significant discovery prior to moving for certification, the Court should apply a heightened level of scrutiny to Plaintiffs' claims, including the evidence put forth in support of those claims.[7] However, even utilizing the *Lusardi* standard, Plaintiffs bear the burden of demonstrating "a factual basis for the allegations" by way of "a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency."[8] This approach requires Plaintiffs to provide "substantial allegations" that the potential class members were together victims of a "single decision, policy or plan infected by discrimination."[9] When determining if Plaintiffs have met this requirement, courts have considered such factors as "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted."[10] While the evidentiary standard applied at

---

[6] *Songer v. Dillon Resources, Inc.*, 569 F. Supp. 2d 703, 706 (N. D. Tex. 2008); *see also Ryan v. Staff Care Inc.*, 497 F. Supp 2d. 820, 824 (N.D. Tex. 2007).
[7] *See* Defendants' Response to Plaintiffs' Motion for Certification, Sec. III.B.
[8] *Jones v. SuperMedia, Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012).
[9] *Id.; see also Clark v. City of Fort Worth*, 800 F. Supp. 2d 776, 779 (N.D. Tex. 2011).
[10] *H & R Block, Ltd. V. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (holding that, in evaluating whether the plaintiffs have met their first-stage burden, the court must be "mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation").

this stage "is not onerous, neither is it invisible."[11]   As such, courts have routinely stricken declarations or affidavits that do not meet basic admissibility thresholds.[12]

### III. THE PARKER, COLLINS, JACKSON, AND OWENS DECLARATIONS FAIL THESE EVIDENTIARY REQUIREMENTS AND SHOULD BE STRICKEN BY THE COURT

The Court should strike Plaintiffs' declarations in their entirety because they are identical, boilerplate forms that do not adequately represent each individual Plaintiff. Courts routinely hold that identical or cookie-cutter declarations are inadmissible, or at least that their credibility is suspect.[13]  Further, many of the statements in the declarations are conclusory, lack foundation, constitute hearsay, or are not based on the affiants' personal knowledge. Defendants object to the following specific assertions in the Parker, Collins, Jackson, and Owens Declarations:

---

[11] *Songer*, 569 F. Supp. 2d at 706; *see also Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) (noting that the plaintiffs must meet its burden to prevent employers from being "unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense[]").

[12] *See, e.g.*, *In re Wells Fargo*, No. H-11-2266, 2012 WL 3308880 (S.D. Tex. Aug. 10, 2012) (striking portions of the declarations as lacking in personal knowledge, containing inadmissible lay opinion, being speculative, and lacking foundation); *Songer*, 569 F. Supp. 2d at 707 (refusing to conditionally certify the class after finding that the plaintiffs' affidavits were "virtually identical and contain[ed] primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge"); *Stiles v. FFE Transp. Servs., Inc.*, No. 3:09-CV-1535-B, 2010 WL 935469, at * 3 (N.D. Tex. March 15, 2010) (denying conditional certification after finding that "each Plaintiff's declaration is close to identical in substance and consists primarily of conclusory allegations unsupported by any facts based on either Plaintiff's personal knowledge); *Lentz*, 491 F. Supp. 2d at 669 (refusing to conditionally certify the class after determining that the plaintiff "failed to identify potential plaintiffs other than one additional person" and "failed to submit evidence showing anything other than Plaintiff's conclusory allegations); *Khan v. Cougar Shop, Inc.*, No. H-06-2862, 2007 WL 2777774, at *2 (S.D. Tex. Sept. 21, 2007) (granting a motion to strike portions of the plaintiff's declaration because the statements were not based on personal knowledge, were lacking in foundation, and were conclusory); *Simmons v. T-Mobile, USA*, No. H-06-1820, 2007 WL 210008, at * 8 (S.D. Tex. Jan. 24, 2007) (noting that the plaintiff failed to present "independent *admissible* evidence" about the class he purported to represent, and that "personal observations were "insufficient. . . to constitute meaningful proof, even under a lenient standard") (emphasis added).

[13] *See, e.g.*, *Stiles*, 2010 WL 935469, at *3 (refusing to grant conditional certification after finding that "each Plaintiffs' declaration [was] close to identical in substance"); *Hampshire v. Port Arthur Indep. Sch. Dist.*, 2006 U.S. Dist. LEXIS 88874, at *12-13 (E.D. Tex. Dec. 7, 2006) ("nearly identical statements in the affidavits that the affiants have personal knowledge of' information relevant to conditional certification are simply insufficient); *Wombles v. Title Max of Alabama, Inc.*, No. 303CV1158CWO, 2005 WL 3312670 at * 3-4 (M.D. Ala. Dec. 7, 2005) (collective action status denied because plaintiffs' five "nearly identical affidavits" were insufficient to demonstrate that other employees desired to opt in or that plaintiffs were similarly situated); Planned Parenthood of Wis. v. Doyle, 162 F.3d 463, 468 (7th Cir. 1998) (discrediting affidavits because they were identical); *Desert Sun Net LLC v. Kepler*, No. C06-1041P, 2006 WL 3091170, at * 6 (W.D. Wash. Oct. 27, 2006) (courts give "little weight to such 'cookie cutter' declarations or too vague and conclusory assertions").

3

| ¶ | **Offending Statement** | **Objection** |
|---|---|---|
| all four declarations | The entirety of multiple paragraphs in all four declarations is identical. | Identical, boilerplate language unlikely to survive cross-examination<br><br>Courts often disapprove of the use of identical language for all affidavits as it suggests a form prepared by counsel rather than an individual statement. |
| 5, all four declarations | Like all other salespersons for Silverleaf, this was my primary job duty throughout my employment. | Vague, speculative, and conclusory.<br>Lacks foundation.<br>Lacks personal knowledge.<br><br>Declarants worked primarily only three of Silverleaf's resorts: The Villages Resort in Flint, Texas, Piney Shores Resort in Conroe, Texas, and Fox River Resort in Sheridan, Illinois. Declarants lack personal knowledge regarding the duties of employees at Silverleaf's other resort locations. Additionally, the declarants lack personal knowledge regarding the job duties of any position that they did not hold. Declarants further lack personal knowledge of the job duties of any salespersons following the acquisition by Orange Lake. |
| 6, Parker, Collins, and Jackson | I am informed and believe based on my personal observations at [each declarant's respective location], as well as my discussions with other salespersons for Silverleaf, that the job duties of the [each declarant's respective positions] at Silverleaf's other resorts were substantially similar to mine. | Vague, speculative, and conclusory.<br>Lacks foundation.<br>Lacks personal knowledge.<br><br>Declarants worked primarily only at The Villages Resort in Flint, Texas, Piney Shores Resort in Conroe, Texas, and Fox River Resort in Sheridan, Illinois, and have no personal knowledge regarding the duties of employees at Silverleaf's other resort locations. Additionally, the declarants lack personal knowledge regarding the job duties of any position that they did not hold.<br><br>Furthermore, the declarants provide no details identifying the salespeople with whom they allegedly discussed these matters or describing the circumstances of the purported conversations, including |

| | | |
|---|---|---|
| | | when or where these alleged conversations took place.<br><br>In addition, Declarants further lack personal knowledge of the job duties of any salespersons following the acquisition by Orange Lake. |
| 9, Parker, Collins, and Jackson; 8, Owens | Like other salespersons at Silverleaf, I routinely worked in excess of 40 hours per work week on behalf of Silverleaf. | Vague, speculative, and conclusory.<br>Lacks foundation.<br>Lacks personal knowledge.<br><br>Declarants worked primarily only at The Villages Resort in Flint, Texas, Piney Shores Resort in Conroe, Texas, and Fox River Resort in Sheridan, Illinois, and have no personal knowledge regarding the hours employees at Silverleaf's other resort locations may have worked. Additionally, the declarants lack personal knowledge regarding the hours worked by those employees holding positions that the declarants did not hold. Declarants further lack personal knowledge of the hours worked of any salespersons following the acquisition by Orange Lake. |
| 10, Parker, Collins, and Jackson; 9, Owens | I was regularly told by my managers that I was not allowed to record more than 40 hours per week on my time cards, even though my managers knew that I was required to work more than 40 hours per week for Silverleaf | Hearsay.<br>Lacks foundation.<br>Improper opinion testimony.<br>Vague, speculative, and conclusory.<br><br>The alleged statements by declarants' managers are hearsay. Additionally, the declarants do not identify the managers that allegedly made these statements or the circumstances of these purported conversations, including who communicated this alleged policy, or when, where, or why this was allegedly communicated to them.<br><br>These statements are further directly controverted by Declarants' time records, which show Declarants routinely recorded more than 40 hours per week throughout their tenure at Silverleaf. |
| 11, Parker, | While there were occasions in my | Vague, speculative, and conclusory. |

5

| | | |
|---|---|---|
| Collins, and Jackson;10, Owens | employment in which I recorded more than 40 hours per week on my timesheets, those timesheets do not accurately reflect all hours that I worked during those weeks. | Declarants do not specify the manner in which these records are allegedly inaccurate or substantiate their claims that they worked over 40 hours in these unidentified weeks. |
| 12, Parker, Collins, and Jackson;11, Owens | Like other salespersons at Silverleaf, I was told by my managers that I could not receive my weekly paycheck until after I submitted a handwritten timesheet for the week in which I recorded no more than 40 hours of work time. | Hearsay.<br>Lacks foundation.<br>Improper opinion testimony.<br>Vague, speculative, and conclusory.<br><br>The alleged statements by declarants' managers are hearsay. Additionally, the declarants do not identify the managers that allegedly made these statements or the circumstances of these purported conversations, including who communicated this alleged policy, or when, where, or why this was allegedly communicated to them.<br><br>Declarants further lack knowledge of the circumstances or substance of communications with sales employees after Orange Lake acquired Silverleaf. |
| 13, Collins and Jackson; 12, Owens | I am informed and believe, based on my time working for Silverleaf, my personal observations at [each declarant's respective location] as well as my discussions with other [each declarant's respective positions], that none of Silverleaf's salespersons were paid overtime and that we were all subject to the same policy which prohibited recording any overtime on our timesheets. | Vague, speculative, and conclusory.<br>Lacks foundation.<br>Lacks personal knowledge.<br><br>Declarants worked primarily only at The Villages Resort in Flint, Texas, Piney Shores Resort in Conroe, Texas, and Fox River Resort in Sheridan, Illinois, and have no personal knowledge regarding the compensation of employees at Silverleaf's other resort locations. Additionally, the declarants lack personal knowledge regarding the compensation of any position that they did not hold. Declarants further lack personal knowledge of the implementation of any Silverleaf policies following the acquisition by Orange Lake.<br><br>Additionally, the declarants provide no details identifying the salespeople with whom they allegedly discussed these |

6

|  |  |  |
|---|---|---|
|  |  | matters or describing the circumstances of these purported conversations, including who communicated this alleged policy, or when, where, or why this was allegedly communicated to them. Finally, this statement is directly contradicted by the declarants' time records, which regularly show more than 40 hours recorded per week. |
| 13, Parker | Irrespective of location, Silverleaf operated its resorts in an almost identical manner with respect to the sales process | Vague, speculative, and conclusory. Lacks foundation. Lacks personal knowledge. Parker worked primarily at Piney Shores Resort in Conroe, Texas, and only briefly at the Seaside resort in Galveston, Texas and the Apple Mountain Resort in Georgia and has no personal knowledge of the manner or fashion in which Silverleaf operated its other resort facilities. Parker further lacks personal knowledge of the operations of any Silverleaf resort following the acquisition by Orange Lake. Additionally, "sales process" is vague and conclusory. |
| 14, Jackson | There are other salespersons at Silverleaf who would be interested in joining this lawsuit if they were given notice of their rights and an opportunity to join. I have spoken with other Silverleaf employees who have expressed an interest in joining this case. | Hearsay. Lacks foundation. Lacks personal knowledge. Alleged statements made by other Silverleaf employees are hearsay. Additionally, Jackson provides no details identifying the other employees that have allegedly expressed any interest in joining this lawsuit or describing the circumstances of these purported conversations, including when or where these alleged conversations took place. |

7

## IV. EVEN IF THE COURT DOES NOT STRIKE PLAINTIFFS' DECLARATIONS, IT SHOULD AFFORD THEM NO WEIGHT

Even if the Court chooses not to strike Plaintiffs' declarations, or portions thereof, it should still evaluate the objections to the evidence in order to give them the weight they deserve.[14] Here, the Court should afford no weight to Plaintiffs' declarations because, as detailed above, they are largely identical and contain conclusory allegations that are without foundation and not supported by the affiants' personal knowledge. In addition to these evidentiary shortcomings, Plaintiffs' declarations are also directly contradicted by Plaintiffs' time and pay records and their deposition testimony. Courts generally afford little, if any, weight to written declarations that contradict deposition testimony.[15] In particular, Defendants note the following instances of contradictory testimony:

| | *James Parker* | | |
|---|---|---|---|
| ¶ | **Declaration Statement** | **Deposition Cite** | **Contradicting Statement** |
| 12 | Like other salespersons at Silverleaf, I was told by my managers that I could not receive my weekly paychecks until after I submitted a handwritten timesheet for the week in which I recorded no more than 40 hours of work time. | *Id.* at 59:4-7 (App. 005).<br><br>*Id.* at 65:8-11 (App. 006). | Q: So in the weeks in which you recorded more than 40 hours on these timesheets why would you have done that?<br><br>A: I don't know.<br><br>Q: Can you recall anyone else ever saying, "If you don't sign something, you won't have a job" other than Marcie Wolf?" |

---

[14] *Lee v. Metrocare Svcs.*, 980 F. Supp. 2d 754, 760 n.1 (N.D. Tex. 2013) (holding that identical, conclusory, or "cookie-cutter" statements should be considered in evaluating the weight and credibility of declarations at the notice stage of an FLSA action); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011) (noting that the court "disregarded" declaration statements containing hearsay in fashioning its ruling on conditional certification); *Marshall v. Eyemasters of Texas, Ltd.*, 272 F.R.D. 447, 449-50 (N.D. Tex. 2011) (giving limited consideration to plaintiffs' "largely identical" declarations as compared to the "compelling declarations from" the defendant).

[15] *See, Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012) (holding that inconsistencies between the plaintiffs' deposition testimony and declarations went to the credibility of the declaration); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI-JLT, 2011 WL 6153212, at *8 (E.D. Cal. Dec. 12, 2011) (holding that contradictions between declarations and depositions go to "the proper weight to be given the evidence); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) (assigning "little weight" to written declarations that contradicted deposition testimony).

|   |   |   | A: Not offhand. |
|---|---|---|---|

| | | *Caitlin Collins* | |
|---|---|---|---|
| ¶ | **Declaration Statement** | **Deposition Cite** | **Contradicting Statement** |
| 6 | I am informed and believe based on my personal observations at the Villages Resort in Flint, Texas, and Fox River Resort in Chicago, Illinois as well as my discussions with other salespersons for Silverleaf, that the job duties of the Sales Representatives and Closers at Silverleaf's other resorts were substantially similar to mine. | Deposition of Caitlin Collins, 13:5-7 (App. 022). | Q: Have you ever worked at any other Silverleaf resort other than Fox River or The Villages?

A: No.

Q: Have you ever traveled to any other Silverleaf resort other than The Villages or Fox River for any reason?

A: No. |
| 10 | I was regularly told by my managers that I was not allowed to record more than 40 hours per week on my time cards, even though my managers knew that I was required to work more than 40 hours per week for Silverleaf. | *Id.* at 31:19-22, 32:8 (App. 023-024).

*Id.* at 39:14-24 (App. 025). | Q: In the weeks in which you recorded more than 40 hours, for example the weeks in which you recorded over 60 hours, did anyone at Silverleaf ask you to change your time sheet?
…
A: I don't remember.

Q: And what do you remember about -- you said, I think, that Trey Hunt is the one who told you it was no longer acceptable to record over 40 hours. What do you remember about the conversation in which he told you that? How did it come about? Was it during a meeting? Was it a one-on-one conversation?

A: It was not -- it was not during a meeting. It was more of a one-on-one thing. It was very quick. Just, you know, make sure your time sheet isn't over 40 hours. And then it was really enforced by the |

9

| ¶ | Declaration Statement | Deposition Cite | Contradicting Statement |
|---|---|---|---|
|  |  |  | verification director, which was Toni Titus at the time. |
| 12 | Like other salespersons at Silverleaf, I was told by my managers that I could not receive my weekly paychecks until after I submitted a handwritten timesheet for the week in which I recorded no more than 40 hours of work time. | *Id.* at 53:10-17 (App. 026). | Q: So you have no knowledge of what any of these people at other resorts recorded on their time sheets, correct?<br><br>A: No, but the policies were companywide, so I would assume they were the same as far as recording 40 hours or less. |
| 13 | I am informed and believe, based on my time working for Silverleaf, my personal observations at The Villages Resort, and my discussions with other Sales Representatives, Closers, and VC Sampler Representatives, that none of Silverleaf's salespersons were paid overtime and that we were all subject to the same policy which prohibited recording any overtime on our timesheets. | *Id.* at 116:7-12 (App. 027).<br><br>*Id.* at 117:22-118:7 (App. 028-029). | Q: So it's possible you were paid overtime and you just don't know?<br>A: I don't know.<br><br>Q: During any of those times in which one of those reps was from another resort working with you, did you ever discuss with them any issues related to compensation or recording your hours?<br><br>A: I don't specifically remember doing that.<br><br>Q: Have you ever seen a paycheck or any kind of compensation document for any other sales rep or sampler rep at Silverleaf?<br><br>A: I don't know. |

|  | *Taylor Jackson* | | |
|---|---|---|---|
| ¶ | **Declaration Statement** | **Deposition Cite** | **Contradicting Statement** |
| 10 | I was regularly told by my managers that I was not allowed to record more than 40 hours per week on my time cards, even though my managers knew that I was required to work more than 40 | *Id.* at 22:10-17(App. 039). | Q: Did anyone -- any supervisor, manager, director ever reprimand you for recording over 40 hours?<br><br>A: When you say that, like discipline me?<br><br>Q: Yes. |

10

| | | | |
|---|---|---|---|
| | hours per week for Silverleaf. | *Id.* at 137:5-13 (App. 043). | A: Correct. I didn't get my check unless I put what they wanted. … Q: Were there ever any weeks in which you worked but didn't receive a paycheck? A: No -- altogether a paycheck or a draw check? Q: Just a paycheck all together. A: No. Q: So you received a paycheck for every week that you performed work, correct? A: Correct. Q: Some of those weeks, as we looked at earlier, your time added up to over 40 hours, correct? A: Correct. Q: Do you recall Josie Buchanan ever giving you any instructions about the time sheets? A: I don't recall with Josie. I just know for sure with Sam and Pat. Q: Do you recall with Trey Hunt that he gave you any instructions about time sheets? A: Yeah, it was with Trey, because Trey, like I said, was -- he was the director when I first started. So that's whenever we knew at first just to keep them around 40. And Josie was still there. I don't even think Cerberus had taken over, that I know of. But Sam was the director whenever it came up to keeping the hours at 40 and not just around there. |
| 12 | Like other salespersons at Silverleaf, I was told by my managers that I could not receive my weekly paycheck until after I submitted a handwritten timesheet for the week in which I recorded no more than 40 hours of work time. | *Id.* at 153:1-4 (App. 045). *Id.* at 32:18-33:6 (App. 040). | |

11

| ¶ | Declaration Statement | Deposition Cite | Contradicting Statement |
|---|---|---|---|
| 13 | I am informed and believe, based on my time working for Silverleaf, my personal observations at The Villages Resort, and my discussions with other Sales Representatives, Closers, and VC Sampler Representatives, that none of Silverleaf's salespersons were paid overtime and that we were all subject to the same policy which prohibited recording any overtime on our timesheets. | *Id.* at 57:4-6 (App. 041).<br><br>*Id.* at 59:4-7 (App. 042).<br><br>*Id.* at 143:9-16 (App. 044). | Q: Did you ever see anyone else's time sheets while you worked at Silverleaf as a sales rep or TO?<br><br>A: No. I just had mine.<br><br>Q: Okay. But did any of them who were from other resorts ever say anything to you about how to record time or what they recorded on their own time sheets?<br><br>A: No.<br><br>Q: Have you ever seen a paycheck for any rep -- sales rep or TO that worked at any of the other Silverleaf locations?<br><br>A: I have not.<br><br>Q: Have you ever seen any of the pay stubs or checks from any of the sales reps or TOs that worked at The Villages?<br><br>A: I don't remember, no. |
| 14 | There are other salespersons at Silverleaf who would be interested in joining this lawsuit if they were given notice of their rights and an opportunity to join. I have spoken with other Silverleaf employees who have expressed an interest in joining this case. | *Id.* at 153:10-16 (App. 045). | Q: Have you discussed this lawsuit or your claims with anyone else?<br><br>A: I have not.<br><br>Q: No one in your family?<br><br>A; Nobody.<br><br>Q: None of your friends?<br><br>A: None. |

| *Zachary Owens* | | | |
|---|---|---|---|
| ¶ | **Declaration Statement** | **Deposition Cite** | **Contradicting Statement** |
| 9 | Like other salespersons at Silverleaf, I routinely worked in excess of 40 hours per work week on | Declaration of Zachary Owens, *Id.* at 77:19-23 (App. 055). | Q: Did you discuss how you were paid with any of those sales representatives or sales managers? |

12

| | | | |
|---|---|---|---|
| 12 | behalf of Silverleaf.<br><br>I am informed and believe, based on my time working for Silverleaf, my personal observations at The Villages Resort, and my discussions with other Sales Representatives, Closers, and VC Sampler Representatives, that none of Silverleaf's salespersons were paid overtime and that we were all subject to the same policy which prohibited recording any overtime on our timesheets. | *Id.* at 77:24-78:5 (App. 055-056).<br><br><br><br><br>*Id.* at 90:15-20 (App. 057). | A: No, ma'am.<br><br>Q: Did you ever discuss completion of time sheets with any other sales representative or sales manager from any of the other Silverleaf properties while you were employed by Silverleaf?<br><br>A: No.<br><br>Q: And have you ever talked to any sales representative or sales manager from any other Silverleaf locations besides The Villages about the hours that they worked while they were employed by Silverleaf?<br><br>A: No, ma'am. |
| 11 | Like other salespersons at Silverleaf, I was told by my managers that I could not receive my weekly paychecks until after I submitted a handwritten timesheet for the week in which I recorded no more than 40 hours of work time. | *Id.* at 35:13-16 (App. 052).<br><br><br><br>*Id.* at 52:3-8 (App. 053). | Q: Were you ever aware of anyone being disciplined for the way they had completed a time sheet while you were at Silverleaf?<br><br>A: No.<br><br>Q: Were you ever disciplined in any way for having a time sheet that showed over 40 hours in one week?<br><br>A: No. |

## V. CONCLUSION

Defendants respectfully request that the Court sustains their objections to the Parker Declaration, Collins Declaration, Jackson Declaration, and Owens Declaration, and assertions

13

DAL:948050.1

contained therein, strike the pertinent statements from the Motion for Certification record, and award Defendants all other relief, equitable or legal, to which they are entitled.

        Respectfully submitted,

        /s/ *Isabel A. Crosby*
        Marc D. Katz
        State Bar No. 00791002
        marckatz@andrewskurth.com
        Isabel Andrade Crosby
        State Bar No. 24050226
        isabelcrosby@andrewskurth.com
        Micala Bernardo
        State Bar No. 24061108
        micalabernardo@andrewskurth.com

        Andrews Kurth LLP
        1717 Main Street, Suite 3700
        Dallas, Texas 75201
        Telephone:  (214) 659 4400
        Facsimile:   (214) 659 4401

        **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

     I conferred with Plaintiffs' counsel Rhonda Wills on November 16, 2016. Plaintiffs are opposed to the relief sought herein.

        /s/ *Micala Bernardo*
        Micala R. Bernardo

14

**CERTIFICATE OF SERVICE**

On November 16th, 2016, the undersigned counsel electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Micala R. Bernardo*
Micala R. Bernardo