UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES PARKER, CAITLIN COLLINS, TAYLOR JACKSON, and ZACHARY OWENS, on behalf of themselves and others similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-2075-B |
| SILVERLEAF RESORTS, INC., CERBERUS CAPITAL MANAGEMENT L.P., SL RESORT HOLDINGS, INC., ORANGE LAKE COUNTRY CLUB, INC., and ORANGE LAKE HOLDINGS, LLLP, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for FLSA Conditional Certification. Doc. 116. Also

before the Court is Defendants' Opposed Motion to Strike Declarations File in Support of Plaintiffs'

Motion for FLSA Conditional Certification. Doc. 122. For the following reasons, the Court

**GRANTS** Plaintiffs' Motion (Doc. 116) but limits Plaintiffs' proposed class definition as described

below. And the Court **DENIES** Defendants' Motion (Doc. 122).

# I.

# BACKGROUND

A.    *Factual Background*[1]

This is a Fair Labor Standards Act (FLSA) case brought by four former employees of Silverleaf Resorts, Inc. (Silverleaf) who allege that they were wrongfully denied overtime compensation and minimum wages. Doc. 91, Pls.' 3d Am. Compl. ¶¶ 3, 5–6, 8–9. Silverleaf is in the business of developing, marketing, and operating timeshare resorts in various markets nationwide.[2] *Id.* ¶ 19. Before May 2011, Silverleaf operated as a stand-alone company. *See id.* ¶ 20. In May 2011, however, it was acquired by SL Resort Holdings, Inc. (SL Holdings), a wholly-owned subsidiary of Cerberus Capital Management L.P. (Cerberus). *Id.* For four years, Silverleaf operated directly under SL Holdings and Cerberus, but in May 2015, Silverleaf was acquired by Orange Lake Country Club, Inc., a wholly-owned subsidiary of Orange Lake Holdings, LLLP (collectively Orange Lake). *Id.* ¶ 22.

While working as employees of Silverleaf, Plaintiffs assert they held similar jobs to one

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' Third Amended Complaint (Doc. 91) and from the parties' briefing on the Motion for FLSA Conditional Certification before the Court. Contested facts will be noted as such.

[2] Plaintiffs contend that Defendants' resorts consist of: (1) Apple Mountain Resort in Clarksville, Georgia; (2) Fox River Resort in Sheridan, Illinois; (3) Holly Lake Resort in Hawkins, Texas; (4) Lake O' The Woods Resort in Flint, Texas; (5) Piney Shores Resort in Conroe, Texas; (6) The Villages Resort in Flint, Texas; (7) Timber Creek Resort in De Soto, Missouri; (8) Hill Country Resort in Canyon Lake, Texas; (9) Holiday Hills Resort in Branson, Missouri; (10) Oak N' Spruce Resort in South Lee, Massachusetts; (11) Orlando Breeze Resort in Davenport, Florida; (12) Ozark Mountain Resort in Kimberling City, Missouri; and (13) Seaside Resort in Galveston, Texas. Doc. 116, Pls.' Mot. for Certification 4. In Defendants' Response, however, they state that there are nine Silverleaf resorts but give no explanation for the discrepancy. *See* Doc. 120, Defs.' Resp. to Pls.' Mot. for Certification 1 [hereinafter Defs.' Resp.]. Defendants do not list (1) Holly Lake Resort; (2) Lake O' The Woods Resort; (3) Timber Creek Resort; or (4) Ozark Mountain Resort. *See id.* at 4. The Court need not resolve this discrepancy because as discussed below, the Court conditionally certifies a class but does not include every resort in the definition. The resorts that are included are not inconsistent with the parties' contentions here.

another and had job titles including "sales representative" and "closer." *Id.* ¶¶ 5–6, 8–9. Plaintiffs say that they were paid on a commission only basis and worked more than forty hours in a work week without being paid overtime compensation. *Id.* Plaintiffs contend that Defendants violated the FLSA by failing to pay Plaintiffs' wages and overtime compensation. *Id.* ¶ 93. Plaintiffs further allege that Defendants violated the FLSA by failing to maintain accurate employee pay records. *Id.* ¶ 95.

Defendants explain that sales employees were non-exempt employees who were paid weekly on a draw versus commission basis. Doc. 120, Defs.' Resp. 6. The draw amount was an hourly rate intended to cover an employee's minimum wage plus overtime for all hours worked. *Id.* If a sales employee's commission exceeded the amount of his or her draw, he or she would be paid only the commission amount for the week. *Id.* If the employee's commission did not exceed the amount of his or her draw, then he or she would earn the amount of commission plus an additional amount of draw depending on the number of hours worked. *Id.* at 6–7.

Plaintiffs stopped working at Silverleaf before Orange Lake acquired it. In order to connect their case to Orange Lake, Plaintiffs argue that upon acquisition of Silverleaf, Orange Lake acquired all of Silverleaf's debts and liabilities under the successor liability doctrine. Doc. 91, Pls.' 3d Am. Compl. ¶ 47.

B.    *Procedural Background*

Plaintiffs originally filed their lawsuit against only Cerberus and Silverleaf on March 13, 2014, with the intent that it would eventually be certified as a collective action. Doc. 1, Pls.' Orig. Compl. Plaintiffs then filed their First Amended Complaint and added SL Holdings as a defendant. Doc. 12, Pls.' 1st Am. Compl. In October 2015, Plaintiffs filed a Motion for FLSA Conditional Certification and Notice to Collective Action Members (First Motion for Certification). Doc. 74. In February

2016, Plaintiffs filed a Third Amended Complaint that asserted almost identical allegations against two new Defendants, Orange Lake Country Club and Orange Lake Holdings. Doc. 91, Pls.' 3d Am. Compl. When Plaintiffs first filed suit in 2014, it would have been impossible to have included Orange Lake as defendants because they did not acquire Silverleaf until May 2015. *Id.* ¶ 22.

In April 2016, the case was reassigned to a different judge for all further proceedings. Doc. 97, Special Order No. 3-304. In May 2016, the parties jointly moved to continue the deadlines in their Scheduling Order because the Court had not yet ruled on Plaintiffs' First Motion for Certification. Doc. 99, Joint Mot. to Continue. The Court granted the continuance and extended, among others, the deadline for discovery from May 2016 to November 2016. Doc. 101, Order. The Court also denied without prejudice Plaintiffs' First Motion for Certification as Plaintiffs' Third Amended Complaint—adding Orange Lake as defendants—was filed several months after Plaintiffs filed their First Motion for Certification. Doc. 100, Order.

After the Court granted in part and denied in part Orange Lake's Motion to Dismiss Plaintiffs' Third Amended Complaint, Plaintiffs refiled their Motion for FLSA Conditional Certification (Second Motion for Certification) in October 2016. Doc. 116. Defendants filed a Response (Doc. 120), and Plaintiffs filed a Reply (Doc. 125). Therefore the Second Motion for Certification is ripe for the Court's review.

## II.

## LEGAL STANDARD

Section 216(b) of the FLSA "authorizes a plaintiff to bring a collective action on behalf of similarly situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court." *Valcho v. Dall. Cty. Hosp. Dist.*, 574 F. Supp. 2d 618, 621

(N.D. Tex. 2008) (citing 29 U.S.C. § 216(b)). When a plaintiff seeks to bring a collective action, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

While the FLSA authorizes a plaintiff to bring an action on behalf of similarly situated persons, the term "similarly situated" is not defined. *See* 29 U.S.C. § 216(b). And the Fifth Circuit has declined to adopt any specific test to determine when plaintiffs are similarly situated. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519, 519 n.1 (5th Cir. 2010); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995) ("[W]e specifically *do not* endorse the methodology employed by the district court, and *do not* sanction any particular methodology."), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The prevailing test used among courts in the Northern District of Texas, however, is the two-step approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), consisting of: (1) a notice stage; and (2) a decertification stage.[3] *See, e.g., Oliver v. Aegis Commc'ns Grp., Inc.*, No. 3:08-cv-828-K, 2008 WL 7483891, at *2, 3 (N.D. Tex. Oct. 30, 2008) (collecting cases).

Under the *Lusardi* approach, the first step—the notice stage—requires a preliminary determination, usually based only on the pleadings and submitted affidavits, of whether potential

---

[3] An alternative and less common approach is the "spurious class action" analysis described in *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990). *See Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 680 (S.D. Tex. 2016). Under the *Shushan* approach, an FLSA collective action is analyzed like a Federal Rule of Civil Procedure 23 class action where courts focus on numerosity, commonality, typicality, and adequacy of representation to determine whether plaintiffs are similarly situated. *Mooney*, 54 F.3d at 1214. But district courts in the Fifth Circuit have not applied this approach with frequency because both the "Fifth Circuit and the Supreme Court have made statements implying that a Rule 23–type analysis is incompatible with FLSA collective actions." *Mason v. Amarillo Plastic Fabricators*, No. 2:15-cv-00109-J, 2015 WL 4481233, at *3 (N.D. Tex. July 22, 2015) (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1529 (2013); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981)).

class members are similarly situated to named plaintiffs. *Mooney*, 54 F.3d at 1213–14. If they are similarly situated, then the court can conditionally certify the action and authorize notice to potential plaintiffs to opt in, and the suit "proceeds as a representative action throughout discovery." *Id.* at 1214. After discovery is largely complete, the defendant may move for decertification, at which point the court proceeds to the second step—the decertification stage—and again considers again whether plaintiffs are similarly situated. *Id.* If the court finds that the plaintiffs who opted in are not similarly situated, then the class is decertified, the opt-in plaintiffs are dismissed without prejudice, and the original named plaintiffs proceed to trial on their individual claims. *Id.* at 1213–14.

Courts use different standards to determine whether plaintiffs are similarly situated depending on whether the case is at the notice or decertification stage. At the notice stage, the court usually has minimal evidence, so "the determination is made using a fairly lenient standard and typically results in conditional certification of a representative class." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012); *see also Mooney*, 54 F.3d at 1214.

At this stage, courts generally "require nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. A factual basis, however, must exist and a plaintiff must show some "identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Jones*, 281 F.R.D. at 287 (quoting *Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010)). In conducting its analysis, the court has "a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Valcho*, 574 F. Supp. 2d at 622 (quoting *D'Anna v. M/A–COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)).

Courts do not often engage in the second step—the decertification process—until after

"discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney*, 54 F.3d at 1214.

But there are circumstances where courts will skip the first, lenient analysis. Where parties have already conducted discovery on the certification issue, courts have less cause for leniency during the "notice" phase and may choose to apply a more stringent standard. *Valcho*, 574 F. Supp. 2d at 622; *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00–3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify [the] matter."); *Pfohl v. Farmers Ins. Grp.*, No. CV03–3080 DT (RCX), 2004 WL 554834, at *3 (C.D. Cal. Mar. 1, 2004) (proceeding directly to the decertification stage of the analysis because discovery on the issue of certification was complete).

## III.

## ANALYSIS

Plaintiffs seek to certify the following class: "all current and former non-exempt 'sales employees' of Defendants, who worked onsite at Defendants' resort properties." Doc. 116, Pls.' Mot. for Certification 2 (footnote omitted). Plaintiffs assert that the term "sales employees" encompasses a variety of titles[4] all dealing with the sale of Defendants' resort timeshares. *Id.* at 1, 2 n.9. Plaintiffs appear to assert that the class should include sales employees who worked at every one of

---

[4] Plaintiffs list "sales representative, sales employee, sales manager, closer, vc sampler representative, or any similar title" as being included in the term "sales employee." Doc. 116, Pls.' Mot. for Certification 2 n. 9. Plaintiffs also note that the term includes only those employees who were paid as commissioned, non-exempt employees. *Id.*

Defendants' resort properties nationwide. *See id.* at 4. The named Plaintiffs stated in their declarations that they worked at the following six of Defendants' resorts: (1) Apple Mountain Resort; (2) Fox River Resort; (3) Lake O' The Woods Resort; (4) Piney Shores Resort; (5) The Villages Resort; and (6) Seaside Resort.[5]

A.    *Conditional Certification Standard*

Before conducting its analysis of whether potential opt-in plaintiffs are similarly situated to named Plaintiffs, the Court first must address Defendants' argument that a more stringent standard, rather than the usual lenient one, should be used. Defendants argue that substantial discovery occurred prior to Plaintiffs moving for conditional certification, and therefore, the Court should skip right to the more stringent standard in its similarly situated inquiry. Doc. 120, Defs.' Resp. 15–16. Defendants support their argument by noting that discovery has been ongoing for 28 months and has included responses to interrogatories, requests for admission, 175 requests for production of documents—involving the production of over 6,000 documents—and depositions of the four named Plaintiffs. *Id.* at 12–13, 16, 16 n.19. Defendants point out that Plaintiffs had the opportunity to depose the Defendants' corporate representatives—and indeed were ordered to schedule those depositions in Dallas by October 21, 2016—but chose not to do so. *Id.* at 13. Furthermore, Defendants note that the discovery period was set to expire on November 21, 2016,[6] only weeks after

_____

[5] In his declaration, Plaintiff Parker stated that he worked at Seaside Resort, Apple Mountain Resort, and Piney Shores Resort. Doc. 117-2, Pls.' App. 38. Collins stated that she worked at The Villages Resort and Fox River Resort. Doc. 117-3, Pls.' App. 41. Jackson stated that he worked at The Villages Resort and Lake O' the Woods Resort. Doc. 117-4, Pls.' App. 44. And Owens stated that he worked at The Villages Resort. Doc. 117-5, Pls.' App. 47.

[6] While the discovery deadline expired in November 2016, the Court is aware of the pending Motion to Extend Discovery Deadline. Doc. 124.

Plaintiffs filed their Second Motion for Certification. *Id.* at 16.

Plaintiffs disagree and argue that Defendants fail to accurately characterize the amount of discovery that has occurred in the case. Doc. 125, Pls.' Reply 7. They posit that Defendants make it appear that discovery is nearly complete, but Plaintiffs have not deposed a single witness. *Id.* Plaintiffs say that while some discovery has occurred, it is far from complete and in no way ready for trial. *Id.* at 8. Plaintiffs point to the fact that Defendants were only recently ordered to produce the names of Defendants' corporate representatives after Defendants refused to produce them for deposition in Dallas, Texas. *Id.* Therefore, according to Plaintiffs, the case is actually in the early stages of discovery, regardless of time, and the Court should apply a more lenient standard. *See id.* at 7–8.

The correct standard to apply in this case is not immediately clear because the amount of discovery and the kind of discovery that has been completed falls somewhere between that of the cases applying the lenient standard[7] and that of the cases applying the stringent standard.[8] There is

---

[7] *See Fulton v. Bayou Well* Servs., —F. Supp. 3d —, 2016 WL 5377903, at *2, 3 (N.D. Tex. 2016) (applying the lenient approach after noting that "even when the parties have conducted partial or limited discovery . . . courts do not skip the first step and apply the second step of the *Lusardi* approach"); *Hernandez*, 191 F. Supp. 3d at 682 (applying the lenient standard, even though some discovery had taken place, where six months of discovery remained, no depositions had been taken, and no discovery had occurred concerning the nature and extent of the relationships among the defendants); *Williams v. Rowell Inv., Inc.*, No. 3:14-cv-1469-P, 2015 WL 12533010, at *1 (N.D. Tex. May 15, 2015) (applying the lenient standard because "[n]otice, time for opting-in, and discovery have not yet taken place.").

[8] *See Blake v. Hewlett-Packard Co.*, No. 4:11-cv-592, 2013 WL 3753965, at *5 (S.D. Tex. July 11, 2013) (applying a heightened evidentiary standard to its analysis at the notice stage because the plaintiffs had the opportunity to gather evidence in that they had five months of discovery, the defendant had taken one deposition, the plaintiffs had taken four depositions, and the plaintiffs had the opportunity to review thousands of pages of documents and attached portions of them to their motion); *Valcho*, 574 F. Supp. 2d at 622–23 (applying a more stringent standard where parties conducted three months of discovery—the total amount of time they had allocated to the certification issue—and the plaintiff had made efforts to identify potential plaintiffs by maintaining a website and mailing written communications directly, so it was appropriate for the court to expect the plaintiff to be able to produce evidentiary support beyond the bare

certainly more discovery than in *Hernandez*, where six months remained in the discovery period and no depositions had been taken, or in *Williams*, where no discovery had taken place. *Hernandez*, 191 F. Supp. 3d at 682; *Williams*, 2015 WL 12533010, at *1. But it appears that there is less discovery than in *Blake*, where both parties had an opportunity to take a deposition, the plaintiffs having taken four, or in *Pfohl*, where the parties agreed that discovery on certification was complete. *Blake*, 2013 WL 3753965, at *5; *Pfohl*, 2004 WL 554834, at *3. Several other cases, though, address situations that are not as clear cut.

In *Valcho* the district court discussed the rationale for using different evidentiary standards. *Valcho*, 574 F. Supp. 2d. at 622. When plaintiffs have not conducted discovery, they cannot marshal their best evidence, so courts should give them some leniency. But that rationale disappears if they have conducted discovery because then the plaintiff should be required to support his or her claim with evidence in order to avoid a "frivolous fishing expedition." *Id.* (quoting *D'Anna*, 903 F. Supp. at 894).

Here, Plaintiffs have engaged in a significant amount of discovery. Plaintiffs' emphasis of the fact that they have not taken a single deposition and only just recently received the names of corporate representatives concerns the Court. Doc. 125, Pls.' Reply 8. The parties were ordered to set the depositions of those corporate representatives on or before October 21, 2016, but Plaintiffs chose not to. *See* Doc. 110, Order. Plaintiffs have had the opportunity to depose those corporate

---

allegations contained in her complaint and declaration); *Basco*, 2004 WL 1497709, at *4 (applying a more stringent standard where "substantial discovery" had occurred, the court heard video deposition testimony of a "substantial number of plaintiffs," and the case had a long procedural history, so the court could "make an educated decision" as to whether certifying the matter as a collective action would survive the decertification process); *Pfohl*, 2004 WL 554834, at *3 (applying a more stringent standard because the parties did not dispute that discovery relating to the certification issue had already been undertaken).

representatives, and they have also received a significant amount of discovery from Defendants. Therefore, it appears that the rationale explained in *Valcho*—where a plaintiff who has been able to conduct discovery should be expected to better support his or her claim—applies here, and the Court should apply a more stringent standard to its analysis.

But even with that rationale in mind, other courts have applied a lenient standard in the face of a substantial amount of discovery. In *McKnight v. D. Houston, Inc.*, the district court determined that a lenient standard was appropriate, even though the parties had deposed the plaintiffs and one individual connected with the defendants, because significant additional discovery had to be completed, "including discovery into the nature and extent of the relationships among the defendants." 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010). Here, Plaintiffs' depositions have been taken but, according to Plaintiffs, there remains a significant amount of discovery because they have not had a chance to depose any witness. Therefore, discovery remains concerning the nature and extent of the relationships among Defendants. As discussed above, though, Plaintiffs chose not to set those depositions and have offered no explanation for doing so.

In *Lang v. DirecTV*, the district court applied a lenient standard, even though the defendants had produced thousands of records over the course of twenty months. No. 10–1085 "G"(1), 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011). The court did so for two reasons: (1) the court had earlier indicated that it would use the lenient standard, so there was an issue of fairness, and (2) the court also noted that it was "leery" to apply any heightened standard because the Fifth Circuit has not yet indicated that discovery warrants a heightened standard. No. 10–1085 "G"(1), 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011). Despite 20 months of discovery, other considerations compelled the court to apply a more lenient standard.

Here, there have been 28 months of discovery, a substantial amount of time. Doc. 120, Defs.' Resp. 16. The Court notes, however, that circumstances outside the parties' control contributed to at least some of the length of their discovery period. Plaintiffs originally filed their First Motion for Certification in October 2015—several months before the discovery deadline. But after the case was reassigned to a different judge, the Court denied the First Motion for Certification without prejudice because Plaintiffs had filed their Third Amended Complaint adding the Orange Lake defendants after they acquired Silverleaf. Furthermore, the live pleading was not settled as such until September 2016 when the Court ruled on Orange Lake's Motion to Dismiss it. While the Court's denial of the First Motion for Certification, by itself, does not compel the Court to conduct its analysis using the lenient standard, it does indicate that the sheer length of the discovery period should not be given as much weight as Defendants propose.

Ultimately the Court agrees with Defendants and finds that it is appropriate to conduct its analysis using the more stringent standard. Plaintiffs have received a substantial amount of discovery from Defendants, including thousands of pages of documents. This is not a scenario where the case was recently filed and Plaintiffs have been able to produce only their own declarations. This case was rapidly approaching its trial date. And while the Court dismissed Plaintiffs First Motion for Certification, causing some delay, there had been almost two years of discovery prior to that.

At this point in the case, Plaintiffs should be able to better support their claims. And with the significant amount of discovery in front of the Court, the Court concludes that it can "make an educated decision" as to whether certifying the matter as a collective action would survive the decertification process. *See Basco*, 2004 WL 1497709, at *4. Thus, the Court will apply a more stringent standard to its similarly situated analysis below.

*B.*     *Defendants' Motion to Strike Plaintiffs' Declarations*

Before turning to its similarly situated analysis, the Court must first address Defendants' Motion to Strike Declarations Filed in Support of Plaintiffs' Motion for Certification. Doc. 122. Defendants argue that Plaintiffs' declarations should be totally stricken, or in the alternative, certain portions should be stricken because they are "identical, boilerplate, rubber-stamped documents that directly contradict Plaintiffs' sworn deposition testimony." Doc. 122, Defs.' Mot. to Strike 1. Defendants also argue that large portions are unsupported by the "declarants' personal knowledge; are vague, speculative, and conclusory; lack foundation or personal knowledge; present improper opinion testimony; or are based on hearsay statements." *Id.* at 1–2.

Plaintiffs respond by arguing that Defendants' objections are predicated on an incomplete reading of Plaintiffs' depositions and that the objections are not proper for the certification stage of litigation. Doc. 127, Pls.' Resp. 1. Plaintiffs then provide Plaintiffs' deposition testimony to support each challenged statement in Plaintiffs' declarations. *Id.* at 4–12.

"The factual support necessary for certification of a collective action is modest, and the district court applies a lenient evidentiary standard." *Nguyen v. Versacom, LLC*, No. 3:13-cv-4689, 2015 WL 1400564, at *3 (N.D. Tex. Mar. 27, 2015). Many courts, therefore, have held that affidavits or declarations offered in support of motions for conditional certification need not be based on evidence that would be admissible at trial. *Id.* (citing *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 759–61 (N.D. Tex. 2013) ("Plaintiffs need not present evidence in a form admissible at trial at the notice stage.")). That said, the contents of affidavits and declarations must be based on personal knowledge. *Lee*, 980 F. Supp. 2d at 762 (citing *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006)).

The Fifth Circuit has noted that "a declarant may satisfy the personal knowledge requirement based on his position as a corporate employee." *Id.* at 763 (citing *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 912 (S.D. Tex. 2010) ("By virtue of his position, [declarant] has properly stated a basis upon which he may have gained personal knowledge of the organization by way of his day-to-day work and interaction with other employees . . . during his tenure with [d]efendant.")). Furthermore, a declaration can overcome evidentiary objections to a declarant's personal knowledge when the declaration contains a statement that it is based on personal knowledge. *Perez v. Alcoa Fujikura, Ltd.*, 969 F. Supp. 991, 998 (W.D. Tex. 1997).

The statements in Plaintiffs' declarations can be broken down into two categories—those about Plaintiffs' experiences as sales employees and those about other sales employees. The Court sees no reason to strike the entirety of the declarations because those statements about Plaintiffs' personal experiences as sales employees reasonably fall within their personal knowledge. For example, in Collins's declaration, she recounts the years in which she was employed, the locations at which she worked, her job titles, that she often worked in excess of 40 hours per week, and that she was regularly told by managers that she was not allowed to record more than 40 hours per week. Doc. 117-3, Pls.' App. 41–42. These kinds of statements reasonably fall within her personal knowledge because they are about her own experience. The other Plaintiffs' declarations follow a pattern similar to Collins's, so they need not be discussed separately.[9]

---

[9] Defendants also argue that the declarations should be stricken because they are "identical" and "do not adequately represent each individual Plaintiff." Doc. 122, Defs.' Mot. to Strike 3. Defendants cite to cases where courts gave identical declarations little weight. *Id.* at 3 n.13. Plaintiffs respond by citing to cases where district courts found similar allegations in declarations to support certification. Doc. 127, Pls.' Resp. 2. The Court finds that similar declarations alone do not warrant the Court striking them from the record. While the weight of such declarations may be called into question during the Court's similarly situated analysis, it would be inappropriate to strike them from the record simply because they are similar.

The statements regarding other sales employees, however, are less clearly within Plaintiffs' personal knowledge. For instance, Collins states the following in her declaration:

> I am informed and believe, based on my time working for Silverleaf, my personal observations at Villages Resort and Fox River Resort and my discussions with other Sales Representatives, Closers, and Sampler Representatives, that none of Silverleaf's salespersons were paid overtime and that we were all subject to the same policy which prohibited recording any overtime on our timesheets.

*Id.* at 42. The Court finds that Collins's assertions about Villages and Fox River, by virtue of her position as a sales employee at those resorts, could reasonably be within her sphere of personal knowledge because of her day-to-day work and interaction with other employees. *See Villarreal*, 751 F. Supp. 2d at 912. But it is less clear how she could have personal knowledge of the conditions at all the other resorts to the extent that she could conclude that *none* of Silverleaf's salespeople were paid overtime.

In Plaintiffs' Reply, they provide deposition excerpts to justify the declaration statements. For example, to back up Collins's assertion that none of Silverleaf's salespersons were paid overtime, Plaintiffs point to her deposition where she explains that she knew denying sales employees overtime was a companywide policy because the management implementing the rules would travel and implement the same rules at each location. Doc. 127, Pls.' Reply 8. Collins's deposition testimony certainly provides more context for her declaration statements. But there are still questions about whether she knew which resorts were visited and if management implemented those policies there.

These questions, though, appear better suited for the Court's similarly situated analysis. There, the Court can consider whether Plaintiffs' conclusory statements as to *all* sales employees are sufficient to conditionally certify a class. While the declarations may fall short for that analysis, they are sufficiently grounded in personal knowledge to survive Defendants' Motion to Strike.  For the

foregoing reasons, the Court **DENIES** Defendants' Motion to Strike. The Court now turns to its similarly situated analysis.

C.     *Whether Plaintiffs Are Similarly Situated*

As referenced above, the Court will apply a more stringent standard to its analysis. The Court considers its approach an "intermediate" one that maintains the two-step process but imposes "a heightened evidentiary standard commensurate with the opportunity to conduct discovery." *Blake*, 2013 WL 3753965, at *5. In other words, the Court will analyze the same elements usually considered at the notice stage, but Plaintiffs must produce more than minimal evidence. *See id.*

Generally, at the first stage in the *Lusardi* analysis, courts "require nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. To make this determination the Court will consider whether: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[10] *Jones*, 281 F.R.D. at 287; *McKnight*, 756 F. Supp. 2d at 801. "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Tolentino*, 716 F. Supp. 2d at 650.

---

[10] The Court notes that other district courts have rejected the third element because it is not statutorily required and because requiring evidence of putative class members who are willing to join a collective action before an appropriate class has been defined conflicts with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. *Hernandez*, 191 F. Supp. 3d at 681. As discussed below, Plaintiffs fall short on the second element with regard to some resorts, so the third element is not outcome determinative for those resorts. And Plaintiffs satisfy both the second and third elements for other resorts, so the third element is again not outcome determinative. Therefore, the Court will consider it without determining the propriety of doing so.

1. <u>Do Aggrieved Individuals Exist?</u>

Plaintiffs assert that Defendants have a "scheme" to avoid paying federally mandated minimum wages and overtime to their non-exempt sales employees. Doc. 116, Pls.' Mot. for Certification 2. Plaintiffs allege that they were forced to do significant amounts of off-the-clock work and not paid overtime compensation for it. *Id.* at 11. And even when sales employees could record over 40 hours, Plaintiffs say, Defendants still failed to properly compensate them. *Id.* at 11,16.

Plaintiffs cite to their deposition excerpts to support their contentions. Plaintiff Parker (Seaside, Apple Mountain, and Piney Shores) stated that he was not compensated for work exceeding 40 hours a week because a director or sales manager told him to record only 40 hours. Doc. 117-17, Pls.' App. 136–37. Parker notes that employees were told to keep their time sheets around 40 hours at regular meetings. *Id.* at 139. Parker said that he was told to record a lunch break even though "[t]here is no lunch break." *Id.* Parker named Allen Jowers as well as Marcie Wolfe and "Richard" as managers and supervisors who were involved in telling him to record only certain amounts of time. *Id.* at 140, 142. Plaintiff Collins (Fox River and The Villages) stated that her "superiors" told her to always record a lunch break even though she didn't take one and co-workers who had worked for Silverleaf for a long time told her to record only 40 hours a week on her time sheet regardless of the number of hours worked. Doc. 117-18, Pls.' App. 150–51.

Plaintiff Jackson (Lake O' The Woods and The Villages) stated that he was not paid for all hours worked because: (1) his director and manager told him to write down incorrect times and to keep his hours around 40 a week; (2) a director or manager told him to record only 40 hours a week on his time sheet; and (3) Pam Wilson, at The Villages, would not give sales employees their checks if the hours were not what they should be at the end of each week. Doc. 117-19, Pls.' App. 162–64.

Jackson also discussed "bucket duty," where sales employees were required to come in on their days off to answer phone calls. *Id.* at 166. Jackson stated that Sam Sims, a manager or supervisor, specifically told him not to record time, so he was never paid for "bucket duty." *Id.*

Plaintiff Owens (The Villages) stated that while he never took lunch breaks, he still had to record them on his time sheets, and the director at the time—either Trey Hung, Sam Sims, or Pat Wilson—told him to change the time he "took lunch" each day to make it appear as though he was actually taking a lunch rather than simply recording it. Doc. 117-20, Pls.' App. 176–78. Owens stated that the directors would discuss the timekeeping policies at morning meetings. *Id.* Owens stated that he also signed blank time sheets "all the time." *Id.* at 180.

Plaintiffs' deposition testimony demonstrates that they did not receive overtime compensation as required by the FLSA because: (1) they were told to record around 40 hours a week regardless of the number worked; (2) they recorded lunch breaks even though they didn't take them; and (3) that these practices likely extended beyond the four named Plaintiffs given the fact that managers and directors communicated these policies at meetings and other co-workers allegedly followed these rules as well. Thus, Plaintiffs have satisfied the first element of the applicable test by showing that there is a reasonable basis for believing that other aggrieved individuals exist. *See Hernandez*, 191 F. Supp. 3d at 682.

2.　　Are There Aggrieved Individuals Who Are Similarly Situated to Plaintiffs?

Plaintiffs "must demonstrate a reasonable basis for believing that a class of similarly situated persons exists." *Hernandez*, 191 F. Supp. 3d at 683 (citing *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012)). To make this determination, courts consider both job requirements and pay provisions. *Hernandez*, 191 F. Supp. 3d. at 683; *Mason*, 2015 WL 4481233, at *4 (citing

*Valcho*, 574 F. Supp. 2d at 621; *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706 (N.D. Tex. 2008)). The positions of the employees and the named plaintiffs need only be similar, not identical. *Valcho*, 574 F. Supp. 2d at 621. Essentially, a sufficient "factual nexus" must exist between the named Plaintiffs' situation and that of the proposed class members. *Williams v. Grayco Cable Servs., Inc.*, 187 F. Supp. 3d 760, 766 (S.D. Tex. 2016).

i.    *Job requirements*

Plaintiffs contend that the proposed plaintiffs include all sales employees who worked for any of the Defendants for the past three years. Doc. 116, Pls.' Mot. for Certification 2–3. Plaintiffs assert that regardless of their role in the sales process, the primary goal of all sales employees was to finalize a contract of sale with prospective buyers. *Id.* at 5.

Defendants argue that Plaintiffs are not similarly situated to putative class members because the proposed plaintiffs include people working in different sales departments, at different resorts across the nation, for different supervisors, using different timekeeping methods, and doing various jobs such as working in contracts, gifting, or hospitality. Doc. 120, Defs.' Resp. 20–21. Defendants point out that some Silverleaf resorts operated with two different sale departments on site: Outside Sales and Member Services.[11] *Id.* at 5. Defendants note that all named Plaintiffs worked for Outside Sales teams rather than Member Services. *Id.* at 10. Defendants further refute Plaintiffs' proposed class of plaintiffs because it encompasses sales employees working under Orange Lake after it took over Silverleaf in May 2015, and Plaintiffs produced no evidence with respect to working under

---

[11] Outside Sales dealt with new customers who had not yet purchased a membership or timeshare interest. Doc. 120, Defs.' Resp. 5. And Member Services, by contrast, exclusively engaged with current Silverleaf owners who were looking to purchase additional or different ownership interests. *Id.*

Orange Lake rather than Cerberus. *Id.*

There is no dispute that the four named Plaintiffs were classified as non-exempt employees of Silverleaf, and that Silverleaf generally classified its sales representatives and sales managers as non-exempt employees. While Plaintiffs held varying job titles, they clarify in their declarations that their duties as "sales representative," "closer," "vc sampler representative," and "sampler representative" were essentially the same in that the primary responsibility was to sell timeshare interests. *See, e.g.*, Doc. 117-2, Pls.' App. 38. Plaintiffs do not differentiate between Outside Sales and Member Services. But they do state that the purpose of all sales employees was to finalize a contract with prospective buyers—the primary goal of Outside Sales as described by Defendants. In short, each of the named Plaintiffs worked in Outside Sales and Plaintiffs describe the duties of only Outside Sales when describing sales employees. Therefore, it does not appear that sales employees of Members Services were similarly situated to Plaintiffs.

The Court further finds that the responsibilities for sales employees appeared to not change with each resort location. In a declaration provided by Defendants, a vice president for Silverleaf described the job responsibilities of sales representatives, sales managers, and sampler representatives without differentiating between resort locations. Doc. 120, Defs.' Resp. 5; Doc. 121-1, Defs.' App. 3. That declaration also differentiates between the kind of sales positions held by Plaintiffs and positions such as sales trainers, gifting clerks, and office managers in that the latter were not paid based on commission. *Id.* at 4. Therefore, from the evidence in the record, it appears that all sales employees who worked in Outside Sales and were paid based on commission performed the same basic duties and were therefore similarly situated with regard to job requirements.

*ii.*     *Payment provisions*

Regarding the compensation scheme, "[a] unified plan, policy, or scheme need not be proved at the notice stage; rather, the existence of a plan or policy is probative evidence that similarly situated plaintiffs exist." *McDonald v. Worldpac, Inc.*, No. 3:13-cv-4965-K, 2015 WL 12753533, at *4 (N.D. Tex. Sept. 8, 2015). But "[e]vidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated." *Williams v. Grayco Cable Servs., Inc.*, 187 F. Supp. 3d 760, 767 (S.D. Tex. 2016). If "there is no single decision, policy, or plan that affects the [p]laintiffs, the case will have enormous manageability problems." *Procter v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 281 (N.D. Tex. 2008) (internal quotation marks omitted.).

FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice. *Rueda v. Tecon Servs., Inc.*, No. H-10-4937, 2011 WL 2566072, at *4 (S.D. Tex. June 28, 2011). Yet "geographic commonality is not necessary to satisfy the FLSA collective action's 'similarly situated' requirement," so long as the employees were impacted by a common policy. *Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *8 (S.D. Tex. Feb. 22, 2010). Accordingly, if there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate. *Flowers v. MGTI, LLC*, No. H-11-1235, 2012 WL 1941755, at *4 (S.D. Tex. May 29, 2012) (citing *Rueda*, 2011 WL 2566072, at *4).

Other district courts in this state have addressed a situation where a plaintiff seeks to certify a group of plaintiffs spread across several geographic locations. In *McCloud v. McClinton Energy Grp., L.L.C.*, the district court found that three affidavits attesting to identical compensation schemes at a Midland, Texas location and a Searcy, Arkansas location of the defendant's company was sufficient

evidence for conditional certification of technicians dispatched out of those two facilities. No. 7:14-cv-120, 2015 WL 737024, at *8 (W.D. Tex. Feb. 20, 2015). But because the plaintiffs failed to produce any evidence that a comprehensive, company-wide compensation scheme existed beyond those two facilities, the court limited its finding of similarly situated employees to those two facilities. *Id.* In *Blake v. Colonia Sav., F.A.*, the named plaintiff worked at a remote office location of the defendant, but because two potential class members filed notices of consent demonstrating that the same overtime policy occurred in the main Dallas office, the court found that the alleged unlawful policy applied irrespective of where employees worked and thus potential plaintiffs were similarly situated. No. H-04-0944, 2004 WL 1925535, at *2 (S.D. Tex. Aug. 16, 2004).

Here, Plaintiffs assert that Defendants operated a "scheme" to avoid paying sales employees overtime. Plaintiffs, however, worked at only six of the Defendants' total number of resort locations. Therefore, if Plaintiffs fail to produce more than minimal evidence that sales employees at all resort locations were impacted by the purported "scheme," then they fail to show a factual nexus connecting Plaintiffs to all potential plaintiffs.

Defendants argue that Plaintiffs fail to establish a common scheme across multiple resorts because Plaintiffs' allegations are purely personal. Doc. 120, Defs.' Resp. 17–19. Defendants argue that Plaintiffs have no knowledge of timekeeping or pay practices at other resorts, or for other time periods, other than those for which they personally worked. *Id.* at 11. Furthermore, Defendants contend that an individualized determination as to whether a sales employee was improperly compensated would require a highly specific, individualized inquiry into which resort the plaintiff worked at, whether supervisors or managers there similarly told sales employees to record only 40 hours, and whether they were every denied overtime. *Id.* at 18.

Here, it has already been established, for purposes of conditional certification, that the four named Plaintiffs are aggrieved in that they were denied overtime compensation for the hours they worked. In order to establish that some common policy or scheme existed that extended to all other sales employees, Plaintiffs provide deposition excerpts that indicate managers and supervisors communicated this policy to multiple employees and that Plaintiffs have heard that other resort locations have implemented the same policy.

In both Owens (The Villages) and Jackson's (The Villages and Lake O' The Woods) depositions, they recount their time working at The Villages, and each names Pam Wilson as an individual involved in perpetrating a rule where employees could record only about 40 hours a week. *See* Doc. 117-19, Pls.' App. 163; Doc. 117-20, Pls.' App. 177–78. Owens also notes that this policy was communicated at meetings, not just in one-on-one conversations. Doc. 117-20, Pls.' App. 177–78. In Parker's deposition, he recounts his time as a sales employee at Piney Shores and similarly names specific directors who perpetrated a policy denying overtime. Doc. 117-17, Pls.' App. 140. He also stated that there were daily meetings where employees were told to keep their hours under 40. *Id.* at 139. Plaintiffs do not appear to have provided testimony relating to Parker's time at Seaside or Apple Mountain.[12] Collins discusses similar experiences at Fox River and The Villages. 121-1, Defs.' App. 300–01.

Plaintiffs attempt to establish the basis for their knowledge of other resorts besides The

---

[12] Even though Parker stated in his declaration that he worked at Piney Shores, Apple Mountain, and Seaside, it appears that his primary location was Piney Shores. Defendants state that Parker was an employee for Piney Shores—they do not mention Apple Mountain or Seaside. Doc. 120, Defs.' Resp. 10. And in Parker's deposition, he answers affirmatively to the statement that he "went to the Apple Mountain Resort a couple of times." Doc. 117-17, Pls.' App. 141. It appears to the Court, then, that his testimony primarily concerns his time at Piney Shores.

Villages, Piney Shores, Fox Fiver, and Lake O' The Woods in their depositions. In Collins's (Fox River and The Villages) deposition, she stated that the other resorts implemented the same policy. Doc. 117-18, Pls.' App. 154. She supports this statement with her assertion that she "knew quite a few people that worked at . . . other resorts that did that." *Id.* at 154–55. These people included a man and his wife who worked at Fox River with her. Collins remembered the man telling her that it was normal to work very late hours, specifically naming Hill Country and Oak N' Spruce. *Id.*

In Collins's testimony, however, she also admits that the man didn't say anything about what was recorded on his time sheets. *Id.* And she admitted that she had never seen a time sheet from another resort other than the two she worked at. *Id.* Similar to Collins's admission, Defendants provide an excerpt from Parker's deposition where he admitted that he did not see any other sales employees' time sheets at The Villages, Seaside, or Apple Mountain. Doc. 121-1, Defs.' App. 259. Furthermore, Parker stated that there was never any training session or conference where sales employees from other resorts would train together. Doc. 121-1, Defs.' App. 260.

To further challenge Plaintiffs' evidence, Defendants reference the Silverleaf and Orange Lake written policies. Doc. 120, Defs.' Resp. 8–10. The Silverleaf Employee Handbook, published in 2012, indicates that nonexempt employees are eligible for overtime pay based on "actual 'hours worked'"; that employees must "record actual time worked"; and that employees "should not work off the clock." Doc. 117-6, Pls.' App. 52–53. Orange Lake's Handbook provides that "no team member is ever permitted to work 'off the clock' for any reason even if instructed to do so by anyone including supervisors, or anyone in management." Doc. 121-1, Defs.' App. 338.

Written policies, such as the Silverleaf Employee Handbook, that contradict a plaintiff's allegations are relevant when assessing whether a common policy or plan exists, but they are not

dispositive. *Richardson*, 2012 WL 334038, at *4. Said differently, a written policy can be a factor weighing against conditional certification, but it will not defeat a plaintiff's motion when a plaintiff provides countervailing evidence. *Id.* (citing *Burch v. Quest Commc'ns Int'l., Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007)). As discussed further below, the Court finds that Plaintiffs' evidence refutes only Silverleaf's Handbook with regard to four resorts.

Defendants also provide declarations of sales employees who worked at various resorts. Adam Carroll, who was a sales representative in Outside Sales at Hill Country Resort, stated that: (1) he was required to keep accurate records of the time he worked; (2) he was trained on how to do so; (3) he frequently worked over 40 hours a week and recorded that time accurately; (4) he was compensated for it; and (5) he was never instructed by a supervisor or manager to not record his time accurately. Doc. 121-1, Defs.' App. 231–32. Defendants provide similar declarations from other employees.[13]

Ultimately, Plaintiffs have produced more than a minimal amount of evidence establishing sales employees were similarly situated with Plaintiffs with regard to The Villages, Lake O' The

---

[13] Michael Carter, a Member Services Sales Representative at The Villages, stated that his time records were accurate, he generally worked between 40 and 50 hours a week and was properly compensated, and has never had a supervisor or manager instruct him not to record his time accurately or record his time for him. Doc. 121-1, Defs.' App. 234–36. Ben Stoneberg, a Member Services Sales Manger at The Villages, stated that he recorded his time accurately and was compensated for the time recorded, he had never been instructed otherwise, and he had never signed a blank time sheet. *Id.* at 238–41. Thomas Tinsley, a Member Services Sales Manager at The Villages who also worked for Outside Sales, made the same assertions as Carter and Stoneberg. Doc. *Id.* at 243–45. But Plaintiffs argue in their Reply that courts in the Fifth Circuit do not give a great deal of weight to "happy camper declarations," so this Court should not give as much weigh to these declarations either. Doc. 125, Pls.' Reply 9 (citing *In re Wells Fargo Wage & Hour Employment Practices Ltig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *18 (S.D. Tex. Aug. 10, 2012) (finding that the hand-picked "happy camper" declarations should not be given significant weight as to their substance when the plaintiffs had not had an opportunity to depose the declarants)). Here, the Court gives them limited weight. For example, where Plaintiffs have produced a substantial amount of evidence regarding the conditions of working in Outside Sales for The Villages, the declarations of Member Services employees at the same resort do not weigh so heavily as to impede certification of Outside Sales employees at The Villages.

Woods,[14] Fox River, and Piney Shores. Plaintiffs' evidence of specific managers and directors telling sales employees to record only 40 hours a week, and evidence of meetings where the purported policy was communicated to more employees than just Plaintiffs, indicates that sales employees at those resorts were all subject to a common policy or plan. Therefore, Plaintiffs' evidence overcomes Silverleaf's written policies. For that reason, the Court finds that sales employees at The Villages, Lake O' The Woods, Piney Shores, and Fox River were similarly situated as to pay provisions.

But, sales employees at resorts other than the four listed[15] are not similarly situated because Plaintiffs failed to produce evidence contradicting Silverleaf's written policies and failed to establish that they were subject to a common policy or plan. While Plaintiffs tried to show that they had knowledge that such a plan or policy extended to other resort locations, the Court concludes from their deposition testimony that they did not have personal knowledge of other resorts and therefore cannot overcome the more stringent standard required in light of the amount of discovery that has been conducted. Unlike in *Blake*, where potential plaintiffs filed consent forms indicating that a similar policy extended to an additional location, no potential plaintiff has filed a consent form or affidavit indicating that other resorts were affected. After several years of discovery, Plaintiffs needed more evidence than four plaintiffs' belief that the policy extended beyond their own resorts.

_____

[14] Plaintiff Jackson also worked at Lake O' the Woods, as he makes clear in his depositions, and this resort was near the Villages but did not have its own sales team. Doc. 121-1, Defs. App. 284–85. Lake O' The Woods is one of the resorts that Defendants do not mention as being part of their Silverleaf resorts. The resort may no longer be a part of the Silverleaf resorts or Defendants might not consider it as a separate resort. Regardless, based on Jackson's testimony, the Court considers testimony concerning The Villages to similarly apply to Lake O' The Woods for purposes of conditional certification.

[15] The Court does not consider sales employees at the following resorts to be similarly situated: (1) Apple Mountain Resort; (2) Holly Lake Resort; (3) Timber Creek Resort; (4) Hill Country Resort; (5) Holiday Hills Resort; (6) Oak N' Spruce Resort; (7) Orlando Breeze Resort; (8) Ozark Mountain Resort; and (9) Seaside Resort.

Similarly, sales employees who worked under only Orange Lake are not similarly situated because Plaintiffs failed to overcome Orange Lake's written policy with evidence to the contrary. Indeed, Plaintiffs produced no evidence of any sales employee's experience working under Orange Lake's policies. In sum, the evidence indicates that only sales employees at The Villages, Lake O' The Woods, Piney Shores, and Fox River were subject to a common policy or plan with regard to pay provisions and were thus similarly situated.

### 3. Are There Similarly Situated Aggrieved Individuals Who Want to Opt in to the Lawsuit?

"[A] district court should satisfy itself that there are other employees . . . who desire to 'opt-in.'" *McKnight*, 756 F. Supp. 2d at 805 (quoting *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007)). Other potential plaintiffs' "interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action." *Id.* (quoting *Simmons*, 2007 WL 210008, at *9). "Even when a common owner has only a few small locations, there must be at least some minimal showing that employees at other locations are interested in joining the suit." *Id.* (citing *Detho v. Bilal*, No. H-07-2160, 2008 WL 1730542, at *6 (S.D. Tex. Apr. 10, 2008)).

Another district court faced a similar set of circumstances to the those before the Court in *McKnight*. There the court considered whether to conditionally certify employees who worked at six different clubs. *See McKnight*, 756 F. Supp. 2d at 797. The named plaintiffs worked at two of the six clubs. *Id.* at 807. Those plaintiffs, however, failed to provide evidence that any employee at one of the other clubs had an interest in joining the suit. *Id.* Even at a lenient standard, it is not enough for

a plaintiff to only state that he or she believes there are others interested in joining. *Id.* (citing *Detho*, 2008 WL 1730542, at *6). Because the plaintiffs could not even make a minimal showing that employees at the other clubs were interested, the court conditionally certified a class of employees at only the two clubs where the named plaintiffs worked. *Id.*

Defendants argue that Plaintiffs failed to show that there are other similarly situated sales employees that would want to opt into the lawsuit. Doc. 120, Defs.' Resp. 21–22. Specifically, Defendants argue that since the suit was filed in March 2014, no one has opted into the lawsuit, one named plaintiff nonsuited his claims, and Plaintiffs stated in their depositions that they have not spoken to current or former Silverleaf employees about the lawsuit. Doc. 120, Defs.' Resp. 22.

As addressed above, the Court found that only those sales employees who worked at The Villages, Lake O' The Woods, Piney Shores, and Fox River are similarly situated. Even if a larger pool of potential class members were similarly situated, Plaintiffs would have failed to establish that there were sales employees at the other resorts interested in joining the suit. To be sure, Plaintiffs believe that others would be interested in joining. But that is not enough to make even a minimal showing.

Plaintiffs have, however, met their burden of establishing that there is interest at The Villages, Lake O' The Woods, Piney Shores,[16] and Fox River by virtue of having worked at those

---

[16] The Court is aware that besides Piney Shores, Plaintiff Parker stated that he worked at Apple Mountain and Seaside. Doc. 117-2, Pls.' App. 38. But as discussed above, it appeared from his deposition testimony that his primary location was Piney Shores. Defendants stated that Parker worked only at Piney Shores, and Plaintiffs do not rebut this contention in their Reply. The Court finds, then, that Parker's personal knowledge is lacking and Plaintiffs otherwise failed to establish that sales employees at Seaside or Apple Mountain were similarly situated to Plaintiffs. Therefore, the Court need not consider whether any time Parker spent at Apple Mountain or Seaside would amount to the Court finding that others from those resorts would be interested in opting in to the suit.

locations themselves. *See McKnight*, 756 F. Supp. 3d at 807; *see also Harper*, 185 F.R.D. at 363–65 (allowing notice to a portion of the proposed class when the evidence did not support notification for the entire proposed class). Therefore, Plaintiffs have established the third element with regard to only The Villages, Lake O' The Woods, Piney Shores, and Fox River.

D.    *Conditional Certification*

As discussed above, the Court finds that Plaintiffs have produced more than minimal evidence to establish that they are similarly situated with putative plaintiffs with regard to four resort locations. *See Mooney*, 54 F.3d at 1213–14. Plaintiffs' declarations and depositions establish that sales employees of The Villages, Lake O' The Woods,[17] Piney Shores, and Fox River (collectively the Four Resorts) were similarly situated. Plaintiffs failed to establish, however, that after Orange Lake acquired Silverleaf, sales employees were treated in the same way. Therefore, the Court finds it appropriate to **GRANT** Plaintiffs' Motion for Certification but limits Plaintiffs' proposed definition. The Court conditionally certifies a class consisting of: (1) current and former sales employees whose primary responsibility was to sell timeshare interests as part of their regular duties—in other words, Outside Sales employees; (2) who were paid on the basis of commissions; (3) who worked at any of the Four Resorts; and (4) who were employed at some time prior to Orange Lake's acquisition[18] of

---

[17] Even though Defendants do not list Lake O' The Woods as a current Silverleaf resort, the Court finds it appropriate to include it in the class. Because the Court is excluding from the class sales employees who worked only under Orange Lake, any sales employee from Lake O' The Woods who might be included would have worked there while it was likely considered a Silverleaf resort under Cerberus. Therefore, it is not inconsistent to include sales employees from Lake O' The Woods and furthermore, as Jackson stated that Lake O' The Woods did not have its own sales team, it is unlikely that its inclusion in the class will produce any additional plaintiffs.

[18] While Orange Lake acquired Silverleaf in May 2015, Defendants' Response appears to assert that the resorts continued operating under Silverleaf policies until they were individually rebranded. *See* Doc. 120, Defs.' Resp. 4. The Villages was rebranded on May 5, 2016. *Id.* Fox River was rebranded on October 28,

Silverleaf.

1.      The Class Period

An FLSA claim "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The "limitations period is not tolled with respect to other potential plaintiffs unless and until they opt in to the case." *Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2005 WL 2095104, at *15 (S.D. Tex. Aug. 30, 2005).

The Court finds that the limitations period should be confined to sales employees who worked for Silverleaf, under the umbrella of Cerberus and not Orange Lake, in the three years before the date the Court conditionally certifies the class. *Id.* at *16. Therefore, the relevant class period will be from three years prior to the date of this Order until the date of Orange Lake's acquisition.[19]

2.      The Opt-In Period

Plaintiffs request a 90-day period from the date Defendants produce contact information for putative plaintiffs to opt-in. Doc. 116, Pls.' Mot. for Certification 20. The Court finds that 60 days form the date Defendants produce the contact information to be appropriate. *See McCloud*, 2015 WL 757024, at *10 (noting that opt-in periods "commonly range from as little as 30 to as many as 120 days" and that "most courts appear to default to a notice period of 60 days, unless potential plaintiffs

_____

2015. *Id.* And Piney Shores was rebranded on April 14, 2016. *Id.* Thus, in order to be cautious, the Court determines that for purposes of conditional certification, the time Orange Lake "acquired" each Silverleaf resort is the date of rebranding. As Defendants do not mention Lake O' The Woods and because the Court cannot easily discern the specific day on which Orange Lake acquired Silverleaf, it considers May 31, 2015 as the date Lake O' The Woods was acquired. At the decertification stage, Defendants are not precluded from arguing that the time of acquisition for all resorts should be limited to a specific date in May 2015.

[19] *See supra* note 18 for the date of acquisition.

are difficult to contact because of their locations or other extenuating factors warrant additional time").

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike (Doc. 122) is **DENIED**. Plaintiffs' Second Motion for Certification (Doc. 116) is **GRANTED** as follows:

1. The Court **conditionally certifies** this collective action;

2. The prospective class may include only: (1) all current and former sales employees whose primary responsibility was to sell timeshare interests as part of their regular duties—in other words, Outside Sales employees; (2) who were paid on the basis of commissions; (3) who worked at any of the Four Resorts; and (4) who were employed at some time between **May 1, 2014** and the date of Orange Lake's acquisition[20] of Silverleaf.

3. Defendants are **ORDERED** to produce the names and current or last known addresses, of all individuals falling within the above defined class (Employee Information). Defendants shall provide the Employee Information in an electronic form that can be used by Plaintiffs in mailing out the Notice. If the information is not stored electronically, Defendants shall provide it in written form.

4. The Court **ORDERS** Defendants to produce the Employee Information no later than **Monday, May 15, 2017**. If Defendants fail to provide the Employee Information by

---

[20] *See supra* note 18 for the date of acquisition.

that date, then the statute of limitations will be equitably tolled for each day after May 15, 2017 that Defendants fail to provide the Employee Information.

5.     The partes are further **ORDERED** to confer and submit an agreed Proposed Notice form as well as an agreed Proposed Consent to Join Form no later than **Monday, May 15, 2017**.

6.     The opt-in period will last until **60 days** following the date Defendants produce the Employee Information.

SO ORDERED.

SIGNED: May 1, 2017.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE