IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES PARKER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:14-CV-02075-B |
| v. | § | |
| | § | |
| SILVERLEAF RESORTS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND
PRELIMINARY APPROVAL OF RULE 23 CLASS SETTLEMENT**

Plaintiffs James Parker, Caitlin Collins, Taylor Jackson, Zachary Owens, Christopher Dix, and Aaron Kessler ("Plaintiffs"), and Defendants Silverleaf Resorts, Inc., Cerberus Capital Management L.P., SL Resort Holdings Inc., Orange Lake Country Club, Inc., and Orange Lake Holdings, LLP ("Silverleaf") (collectively, the "Parties") file this Joint Motion for Approval of FLSA Settlement and Preliminary Approval of Rule 23 Class Settlement with respect to a proposed settlement of: (1) a nationwide FLSA collective action comprised of non-exempt sales employees of Defendants; and (2) the claims of the members of a Rule 23 Illinois Settlement Class for alleged violations of Illinois wage and hour laws asserted by the non-exempt sales employees of Defendants in Illinois. The Illinois state law claims, which were originally asserted in the related action pending before this Court, *Dix, et al. v. Silverleaf Resorts, Inc., et al.*, Case No. 3:17-cv-3249, have been added to this action by way of a Consolidated Complaint sought to be filed pursuant to a Stipulation of the Parties (Dkt. ## 403 & 403-1).

The terms of the proposed settlement are set out in detail in the Parties' FLSA Settlement Agreement (Exhibit 1) and Illinois Rule 23 Class Settlement Agreement (Exhibit 2), which are attached hereto.

## I.
## <u>INTRODUCTION</u>

It is Plaintiffs' position that the proposed settlements in this case and the mechanism for approval are patterned after an analogous FLSA and Rule 23 overtime matter, *Edwards v. KB Home*, Civil Action No. 3:11-cv-00240 (S.D. Tex.), in which an FLSA collective action and a Rule 23 class settlement of California wage and hour claims were approved by the Honorable Gregg Costa (Fifth Circuit Court of Appeals) in 2016 while Judge Costa was sitting by designation in the Southern District of Texas. Declaration of Rhonda H. Wills ("Wills Dec."), ¶¶ 29, 30. Plaintiffs' lead counsel in this matter, Ms. Wills, was also the lead counsel for the plaintiffs in *Edwards*. *Id.*

The FLSA settlement reached here encompasses the FLSA claims of four named plaintiffs and 200 opt-in plaintiffs who joined this case pursuant to the opt-in collective action mechanism of 29 U.S.C. § 216(b) ("FLSA Plaintiffs"). For all the reasons set forth below and in the supporting documents, the FLSA settlement is fair, reasonable, and adequate. The Parties respectfully request that the Court approve the FLSA settlement as outlined herein and enter the Proposed Order attached to this Motion approving the FLSA settlement.

The Rule 23 settlement reached here encompasses the Illinois state law wage and hour claims of two named plaintiffs—Christopher Dix and Aaron Kessler ("Illinois Plaintiffs")—and the 1,004-1,049 members of the Illinois Settlement Class. To facilitate the settlement, the Parties respectfully request that, for settlement purposes, the Court grant preliminary approval and pursuant to Rule 23(b)(3) certify an opt-out settlement class, as set out below, in *Dix, et al. v. Silverleaf Resorts, Inc., et al.*, Case No. 3:17-cv-3249, pending before this Court ("*Dix*" or the

- 2 -

"*Dix* Lawsuit"). For all the reasons set forth below and in the supporting documents, the Rule 23 class settlement is fair, reasonable, and adequate. The Parties respectfully request that the Court approve the FLSA settlement and grant preliminary approval of the Illinois Rule 23 class settlement as outlined herein and enter the Proposed Order attached to this Motion.

## II.
## FACTUAL BACKGROUND

### A.    Overview of the *Parker* Litigation

*Parker* was filed in the Southern District of Texas on March 13, 2014, seeking minimum wages and overtime damages under the FLSA on behalf of sales employees, and requesting collective treatment of the claims under 29 U.S.C. § 216(b). On June 6, 2014, the case was transferred to this Court and renumbered to Cause No. 3:14-cv-2075. On May 1, 2017, the Court conditionally certified a class of non-exempt sales employees and authorized notice. The notice period began on May 15, 2017, and ended on July 31, 2017. Plaintiffs sent notice to 561 putative class members, and 200 Plaintiffs joined the suit, in addition to the four named plaintiffs. The Parties conducted extensive discovery during and following the notice period. Specifically, Silverleaf produced hundreds of thousands of documents in response to hundreds of requests for production from Plaintiffs. In addition, Plaintiffs deposed two of Silverleaf's management employees, and Silverleaf deposed the four named plaintiffs.

### B.    Overview of the *Dix* Litigation

The *Dix* Lawsuit was filed on November 30, 2017 as a separate, related lawsuit by two former Silverleaf non-exempt sales employees from Illinois. *Dix* alleged violations of (1) the Illinois Wage Payment and Collection Act, 820 ILCS §§ 115/2, *et seq.*, requiring compensation for all actual hours worked, as well as minimum wage and overtime pay; and (2) the Illinois

Minimum Wage Law, 820 ILCS §§ 105, *et seq.*, requiring payment of minimum wages and overtime wages and maintenance of records reflecting employees' accurate working hours.

The *Dix* named plaintiffs sought relief on behalf of an opt-out putative class of allegedly similarly situated Silverleaf non-exempt sales employees under Rule 23 of the Federal Rules of Civil Procedure. In total, the putative class is estimated to consist of approximately 1,000 individuals. The *Dix* named plaintiffs had not moved for class certification prior to the Parties' agreement to settle the case, nor had any discovery been conducted prior to settlement. Defendant Cerberus Capital Management, L.P. filed an answer to the Complaint, and the remaining defendants in *Dix* had a fully briefed Rule 12(b)(6) motion to dismiss the Complaint pending at the time the Parties reached their agreement to settle the case.

### C.     Mediation and Settlement

On October 26, 2017, prior to the filing of the *Dix* lawsuit, the Parties attended mediation with mediator Nancy Huston. Ms. Huston, who is based in Houston, Texas, is experienced in the mediation of wage and hour claims, and is one of the leading mediators of wage and hour class and collective actions. Declaration of Rhonda H. Wills ("Wills Dec."), ¶ 19 (Exhibit 3). During the mediation, the Parties negotiated a possible resolution of the FLSA claims. No resolution was reached on the date the Parties mediated, but through Ms. Huston the parties continued to engage in meaningful discussions regarding potential settlement in the months that followed, in addition to gaining greater understanding of the facts and their legal import through continuing discovery and motion practice. *Id.* ¶ 20. The *Dix* lawsuit was also filed during this time period.

Ms. Huston issued a mediator's proposal to resolve both the *Parker* and *Dix* claims, which the Parties accepted on February 8, 2018, and the Parties have further agreed to the settlement terms proposed below and as described in detail in Exhibits 1 and 2. *Id.* ¶ 23; Declaration of Ruth

A. Bahe-Jachna ("Bahe-Jachna Dec."), ¶ 11. The Plaintiffs have sought to file their Consolidated Complaint pursuant to a Stipulation of the Parties, filed on February 27, 2018 (Docket # 403), seeking to add claims mirroring those alleged in *Dix* to the *Parker* matter. The Parties' counsel have apprised this Honorable Court that they have agreed upon settlement terms and that they wished to present their proposed settlement of the Illinois state law claims to this Court for the process of approval and administration of the settlement terms. Accordingly, the *Dix* lawsuit will be dismissed without prejudice pending this Court's review and approval of this global settlement.

## III.
## SUMMARY OF SETTLEMENT TERMS

### A.    Summary of the FLSA Settlement

The Parties have agreed to settle the wage and hour claims of the FLSA Plaintiffs.  The terms of the FLSA Settlement Agreement are summarized as follows and are set forth in full in Exhibit 1.

The Settlement Agreement has been executed by James Parker, Caitlin Collins, Taylor Jackson, and Zachary Owens, in accordance with the guidelines of the Fair Labor Standards Act. Parker, Collins, Jackson, and Owens, as lead Plaintiffs, have the authority to sign the Settlement Agreement as representatives on behalf of and bind all members of the certified collective action. By opting in to this FLSA collective action and in filing a notice of consent to join this matter, each FLSA Plaintiff agreed to be bound by and to share in as the Court may approve any settlement negotiated on behalf of all Plaintiffs.

With regard to the settlement terms, the "Gross Settlement Fund" for the FLSA Settlement is a total of $1,250,000.00 [ONE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS], inclusive of the FLSA Plaintiffs' attorneys' fees, FLSA Plaintiffs' litigation expenses and costs, as well as service awards and the costs of the Claims Administrator.  The average per capita gross

compensation is approximately $6,124 with a total of 204 Plaintiffs participating in the settlement. Each FLSA Plaintiff will receive a proportionate share of the net Settlement Fund according to a formula based on the length of each person's individual tenure and compensation. The Settlement Agreement further provides for a minimum payment of $250 to each FLSA Plaintiff from the Settlement Fund.

Key terms of the Settlement Agreement are summarized below.

Scope of the Class. The settlement shall encompass the claims of the 204 FLSA Plaintiffs who filed notices of consent to join this action.

Payment of Settlement Funds. The Parties agree that the settlement funds be distributed based on the criteria set forth in Paragraph 15 of the FLSA Settlement Agreement, subject to the conditions and terms set forth in that Agreement (Ex. 1).

Service Payments. Plaintiffs request the Court approve the payment of service awards in the amount of $10,000.00 [TEN THOUSAND DOLLARS] each to James Parker, Caitlin Collins, Taylor Jackson, and Zachary Owens. Defendants do not object.

Reserve Fund. The Parties further stipulate to a reserve fund of $20,000.00 [TWENTY THOUSAND DOLLARS] to resolve administrative issues with the settlement (such as missing checks, miscalculated amounts, etc.). Unused funds will be distributed in the same manner as the initial distribution among FLSA Plaintiffs 120 days after the initial settlement payments are made.

Attorneys' Fees and Costs. Plaintiffs' counsel request an award of $500,000.00 [FIVE HUNDRED THOUSAND DOLLARS] in attorneys' fees to Class Counsel and for recovery of costs and litigation expenses incurred in the amount of $25,757.21. Defendants do not object.

Claims Administrator. The Parties request that the Court approve Kurtzman Carson Consultants, LLC ("KCC") as Claims Administrator. KCC is an independent, experienced third-

party claims administrator.  The Parties request that the Court approve a payment to be made to

the Claims Administrator in the amount not expected to exceed $20,000.00.

     Release of Claims.  As described in the Settlement Agreement, the proposed Settlement

Agreement includes the following release of claims:

> 31.    The <u>Settlement</u> shall effect a complete settlement and release and shall extinguish waive, fully release, and forever discharge the <u>Released Parties</u> as to each <u>Plaintiff</u> (as defined in paragraph 11 above) as to all claims arising from the <u>Actions</u>, from any and all claims, debts, liabilities, demands, obligations, damages, action, or causes of action of any kind, whether known or unknown, which have been or could have been asserted against the <u>Released Parties</u> in the <u>Action</u> pertaining to or arising from violations of wage and hour laws, including but not limited to: claims under the Fair Labor Standards Act, and the wage and hour laws of the states of residence or employment of the <u>Plaintiffs</u>, except that this release will not cover any claims arising under the wage and hour laws of the State of Illinois. The claims enumerated in this paragraph shall be referred to as the "<u>Released Claims</u>." Nothing in this <u>Settlement</u> shall be construed to waive any right that is not subject to waiver by private agreement.

> 32.    The <u>Released Parties</u> include: (a) all of <u>Silverleaf's</u> present and former parent companies, subsidiaries, related, or affiliated companies; (b) all of <u>Silverleaf's</u> divisions; (c) all of the shareholders, officers, directors, employees, agents, attorneys, insurers, and successors and assigns of all of these entities; and (d) any individual or entity which could be jointly liable with <u>Silverleaf.</u>

     The Parties request that the Court approve the terms of the FLSA Settlement (Ex. 1).

**B.    Summary of the Illinois Rule 23 Class Settlement**

     The Parties have agreed to settle the Illinois wage and hour claims of the Illinois Settlement

Class (all as defined in Exhibit A) for the gross amount of $250,000.00 [TWO HUNDRED FIFTY

THOUSAND DOLLARS] (the "Gross Settlement Fund"). Key terms of the Settlement Agreement

are summarized below.

     <u>Scope of the Settlement Class</u>. The settlement shall encompass the claims of the two named

plaintiffs with Illinois claims, and Plaintiffs ask that the Court approve them as the "Class Representatives" of a settlement class, described below, and collectively referred to as the "Illinois Settlement Class."

The settlement asks the Court to conditionally certify, for settlement purposes only, the following "Illinois Settlement Class," described as:

> All non-exempt persons who were employed by <u>Silverleaf</u> in the State of Illinois with the job title of sales employee or any similar title, at any time during the period of November 30, 2007 through February 8, 2018.

The Illinois Settlement Class encompasses approximately 1,000 individuals, in addition to the two named plaintiffs, 65 of whom filed notices of consent to join the FLSA claims in this lawsuit.

The Parties request that the Court grant preliminary approval of the terms of the proposed Rule 23 class settlement as to the Illinois Settlement Class, approve notice to the Illinois Settlement Class in the form attached hereto as Exhibit 4, providing a description of the terms of the proposed settlement and an opportunity for members of the Illinois Settlement Class to request exclusion from (i.e., opt out of) this action, or to file objections to the proposed settlement. As defined in the Illinois Rule 23 Class Settlement Agreement, the "Illinois Settlement Class" that will share in the settlement proceeds are those members of the Illinois Settlement Class who do not submit a timely and valid Request For Exclusion from this action to the Claims Administrator after receipt of a Notice that informs them of their right to opt out of the litigation.

The Parties further request that, upon conclusion of the period for Illinois Settlement Class members to request exclusion from the lawsuit or to file objections to the proposed settlement, that the Court hold a hearing on any objections that may be filed, hold a final fairness hearing, and order any additional appropriate notices that may be required to ensure the enforceability of the

settlement of the claims of the Illinois Settlement Class.

Payment of Settlement Funds. The Parties agree that the settlement funds be distributed based on the criteria set forth in Paragraph 17 of the Illinois Rule 23 Class Settlement Agreement, subject to the conditions and terms set forth in that Agreement. The factors used in allocating the settlement funds include the individual's average compensation as a non-exempt sales employee and number of weeks worked during the class period as a non-exempt sales employee. The formula provides a minimum allotment of $50 per person.

Service Payments. Plaintiffs request the Court approve the payment of service awards in the amount of $5,000.00 [FIVE THOUSAND DOLLARS] to Christopher Dix and $5,000.00 [FIVE THOUSAND DOLLARS] to Aaron Kessler.  Defendants do not object.

Reserve Fund. The Parties further stipulate to a reserve fund of $10,000.00 [TEN THOUSAND DOLLARS] to resolve administrative issues with the settlement (such as missing checks, miscalculated amounts, etc.). At the end of a 120-day period, the Claims Administrator shall distribute the unused portion of the Reserve Fund to all Illinois Settlement Class members using the same pro rata formula set forth in Paragraph 17 of the Settlement Agreement.

Attorneys' Fees and Costs. The Parties agree that Silverleaf will not oppose an award of attorneys' fees to Class Counsel in an amount of up to $100,000.00 [ONE HUNDRED THOUSAND DOLLARS] as attorneys' fees and for recovery of costs and litigation expenses incurred up to a maximum of $7,500.00 [SEVEN THOUSAND FIVE HUNDRED DOLLARS] with respect to the settlement of these claims.

Claims Administrator. The Parties request that the Court approve Kurtzman Carson Consultants, LLC ("KCC") as Claims Administrator. KCC is an independent, experienced third-

party claims administrator. The Parties request that KCC be paid all reasonable fees and costs incurred in administering this settlement in an amount not to exceed $20,000.00.

       Release of Claims. As described in the Settlement Agreement, the proposed Settlement Agreement includes the following release of claims (at paragraphs 46-47):

> 46.    The Settlement shall effect a complete settlement and release and shall extinguish waive, fully release, and forever discharge the Released Parties as to each Class Member (as defined in paragraphs 11 and 13, above) as to all claims arising from this action, from any and all claims, debts, liabilities, demands, obligations, damages, action, or causes of action of any kind, whether known or unknown, which have been or could have been asserted against the Released Parties in this or the *Dix* Lawsuit pertaining to or arising from violations of any federal, state, or local wage and hour laws, including but not limited to: claims under the Fair Labor Standards Act; claims under the Illinois Wage Payment and Collection Act, 820 ILCS §§ 115/2, *et seq.*; and claims under the Illinois Minimum Wage Law, 820 ILCS §§ 105, *et seq.*. The claims enumerated in this paragraph shall be referred to as the "Released Claims." Nothing in this Settlement shall be construed to waive any right that is not subject to waiver by private agreement.

> 47.    The Released Parties include: (a) all of Silverleaf's present and former parent companies, subsidiaries, related or affiliated companies; (b) all of Silverleaf's present and former divisions; (c) all of the present and former shareholders, officers, directors, employees, agents, attorneys, insurers, and successors and assigns of all of these entities; and (d) any individual or entity which could be jointly liable with Silverleaf.

## IV.
## MOTION FOR APPROVAL OF FLSA SETTLEMENT

**A.    Legal Standard**

       The decision to approve an FLSA collective action settlement is left to the district court's sound discretion. *See Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004). Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). If the proposed

settlement reflects a reasonable compromise over contested issues, the court may approve the settlement to promote the policy of encouraging settlement of litigation. *See Quintanilla v. A & R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *6 (S.D. Tex. May 7, 2008).

Federal courts routinely approve similar settlements reached in FLSA collective actions. *See, e.g., Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) (approving settlement of overtime claims asserted by 1735 collective action members for $4.9 million); *Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (settlement fund totaling $42 million approved by court); *Mallin v. Nat'l City Mortg. Inc.*, 2007 WL 4208336 (N.D. Cal. Nov. 27, 2007) (court approval of a $5 million settlement). Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required.

**B.    The Settlement Resolves a Bona Fide and Contested Dispute.**

The litigation of the FLSA claims asserted in *Parker* was strongly contested, protracted, and reflected a bona fide and contested dispute between the Parties for almost four years. The case was filed in March 2014, and in the almost four years since filing, counsel have developed a keen understanding of the strengths and weaknesses of the claims, as well as the potential defenses thereto, both through discovery and motion practice.

Among the discovery engaged in by the Parties was voluminous written discovery, including Silverleaf's responses to multiple sets of interrogatories, responses to hundreds of requests for production, and the production of thousands of documents. Wills Dec. at ¶ 16. In addition, Silverleaf took the depositions of the four named Plaintiffs, and Plaintiffs' counsel took the depositions of two former and current Silverleaf management employees. Wills Dec. at ¶ 16.

In addition, the motion practice on the collective action and the merits was extensive and

hard-fought. For example, Plaintiffs successfully sought FLSA conditional certification of Silverleaf non-exempt sales employees, and hundreds of Plaintiffs opted in to the *Parker* suit. Defendants claimed numerous defenses to Plaintiffs' claims, including that class and collective treatment was inappropriate, and intended to file a motion for decertification at the close of discovery. In short, the claims in this matter were thoroughly contested, reflecting a bona fide dispute. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Plaintiffs also fought and prevailed on a number of motions to dismiss filed by Defendants.

**C.    The Proposed Settlement Is Fair and Reasonable.**

The second prong of the Court's settlement approval inquiry focuses on the fairness and reasonableness of the proposed settlement. As explained below, the Court should readily conclude that the settlement meets the criteria for approval.

This settlement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of: (1) providing substantial and immediate relief to Plaintiffs, and (2) eliminating the inherent risks both sides would bear if this had continued to resolution on the merits. The Parties engaged in a mediation with a qualified mediator, Nancy Huston, and ultimately, a mediator's proposal allowed the Parties to bridge the gap between their respective settlement positions and obtain the resolution described above. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See, e.g.*, *Lynn's Food Stores, Inc.,* 679 F.2d at 1354. Moreover, as noted below, consideration of several additional factors confirms that the proposed settlement is fair and reasonable.

**1.    The Amount Offered for Settlement Is Reasonable.**

By any objective measure, the compensation this settlement makes available to the FLSA Plaintiffs is favorable and provides collective action members reasonable consideration for their

- 12 -

alleged claims. The settlement brings the FLSA Plaintiffs significant monetary value now, not years from now, and provides certainty about the outcome. Further, the average per capita gross compensation of approximately $6,127 provides a meaningful recovery. Wills Dec. at ¶ 25. This is not a case where the benefit to the class is largely injunctive or of modest value.

Although the maximum possible award at trial could potentially be larger than the settlement amount, the inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of the risks of establishing liability and damages. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (affirming a district court's approval of a settlement after properly comparing the settlement amount and "the likely rewards the class would have received following a successful trial of the case"); *Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 228 F.R.D. 541 (S.D. Tex. 2005) (approving a settlement amount below the possible recovery amount); *Quintanilla v. A & R Demolition, Inc.*, 2008 WL 9410399 (S.D. Tex. May 7, 2008) (finding settlement of FLSA claims for a percentage of the claimed damages to be reasonable in light of uncertainties involved in the litigation).

## 2. The Expense, Complexity and Duration of Further Litigation.

This case is complex and carries significant risks for the Parties as to both legal and factual issues. There is no question that even if FLSA Plaintiffs were to prevail at trial, Silverleaf would appeal the verdict leading to further expenses and uncertainty, as well as continued litigation for several years. It is safe to assume that post-trial litigation could consume at least another two or three years before there would be finality in this litigation, which dates back to March 2014.

## 3. The Experience and Views of Counsel

The experience of counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement. The involvement of experienced counsel and the fact that the settlement agreement was reached in arm's-length negotiations, after a "long, hard-

fought mediation" creates a presumption that the agreement is fair. *Quintanilla*, 2008 WL 9410399, at *4. Although the Court is not bound by counsels' opinion, their opinion is nonetheless entitled to great weight. *See Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (explaining that courts should not substitute their judgment for that of counsel, absent evidence of fraud or overreaching). The FLSA litigation had the benefit of attorneys who are highly experienced in complex litigation and familiar with the facts and law in the case, and who have negotiated settlements in other complex litigation cases, including class and collective action settlements. Wills Dec. at ¶ 10–11. As with all the aspects of the litigation, the settlement negotiations were hard-fought and at arm's-length.

In the view of Plaintiffs' lead counsel, the settlement provides substantial benefits to the FLSA Plaintiffs, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Wills Dec. at ¶ 28. Further, in the experience of Plaintiffs' lead counsel, when evaluated against the risks and compared with similar litigation, the relief to the class is substantial. *Id.* at ¶ 28. Because this settlement is fair, adequate, and eminently reasonable, it should be approved.

### V.
### MOTION FOR PRELIMINARY APPROVAL OF RULE 23 SETTLEMENT OF ILLINOIS STATE LAW CLAIMS

The Parties seek conditional certification, for settlement purposes, of the Rule 23(b)(3) class and preliminary approval of the proposed settlement of Illinois state law wage and hour claims added to this matter through the proposed filing, by agreement of the Parties, of a Consolidated Complaint incorporating Illinois state law wage and hour claims from the *Dix* Lawsuit, added to this case in order to facilitate the efficient approval of the settlement of all such

- 14 -

claims.

## A.    Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure provides that the court must approve a settlement of a class action. FED. R. CIV. P. 23(e). To approve a class action settlement, the court must also find that the agreement is "fair, adequate, and reasonable." *Id.*; *see also Ibarra v. Texas Employment Comm'n*, 823 F.2d 873, 879 (5th Cir. 1987). Preliminary approval of a proposed class action settlement is the first in a two-step process required before a class action may be settled. David F. Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 30.41 (2005). In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

"In determining the adequacy and reasonableness of the proposed settlement, the court does not adjudicate the dispute . . . ." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). Rather, in evaluating the proposed settlement, the court should consider: (1) whether the settlement was the product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representatives, and the absent class members. *Id*. Notably, the Fifth Circuit has expressly recognized a "strong judicial policy favoring the resolution of disputes through settlement." *Id*. Based on the facts presented herein, the Court should also determine that the Illinois state law class settlement is fair, reasonable, and adequate.

**B.  The Illinois Rule 23 Class Settlement Agreement Satisfies the Applicable Standards for Approval Under Rule 23.**

The Illinois Plaintiffs allege that Silverleaf violated Illinois state wage and hour laws, specifically alleging that Silverleaf regularly and repeatedly failed to properly compensate them for the actual time they worked each week, failed to pay them overtime compensation for all hours worked in excess of 40 hours per work week, and failed to maintain accurate records of all hours they worked. Cerberus Capital Management L.P. has denied Plaintiffs' allegations and asserted numerous defenses, and the remaining defendants have moved to dismiss Plaintiffs' claims.

Through this matter and the *Dix* Lawsuit, counsel for Plaintiffs have extensively investigated and researched the facts and circumstances underlying the issues raised in the lawsuit and the law applicable thereto, interviewed putative class members, and analyzed the various legal arguments raised by Silverleaf in defense of its positions. Wills Dec., ¶ 16–17. Plaintiffs' Counsel recognizes the expense and length of continued proceedings necessary to continue the lawsuit against Silverleaf through trial and through any possible appeals. Plaintiffs' Counsel has also taken into account the uncertainty and the risk of the outcome of further litigation, including the pending fully briefed motion to dismiss, the risk that the Putative Illinois Class might not be certified as a class in light of Defendants' presumed opposition to class certification, and may not prevail on all or any of their claims, as well as the difficulties and delays generally inherent in such litigation. Wills Dec., ¶ 28. Based on the foregoing, Plaintiffs' Counsel believes the proposed settlement is fair, adequate, and reasonable, and in the best interests of the Illinois Settlement Class. *Id.* ¶ 28.

Counsel for Silverleaf has also extensively investigated and researched the facts and circumstances underlying the issues raised in this lawsuit and the law applicable thereto. Bahe-Jachna Dec. ¶ 9-10. Although Cerberus Capital Management, L.P. filed an answer to the *Dix* Lawsuit, the remaining defendants filed a Rule 12(b)(6) motion to dismiss the Complaint in its

- 16 -

entirety, which was fully briefed and pending before the Court at the time that the Parties reached their settlement. *Id.* ¶ 9. Although defense counsel believes Silverleaf has meritorious defenses to the lawsuit, Silverleaf has concluded that further defense of this lawsuit would be lengthy and expensive for all Parties. *Id.* ¶ 12. Therefore, Silverleaf has agreed to settle this lawsuit in the manner and upon the terms set forth in the Settlement Agreement to put to rest all claims that are or could have been asserted against it in the *Dix* Lawsuit and in this action.

The Illinois Rule 23 Class Settlement Agreement was the product of lengthy negotiations by experienced counsel and has the salutary effect of (1) providing substantial relief to Plaintiffs, and (2) eliminating inherent risks both sides would bear if this complex litigation continued to resolution on the merits. The Illinois Rule 23 Class Settlement Agreement is not the product of fraud or collusion. To the contrary, the objective circumstances strongly support that the Illinois Rule 23 Class Settlement Agreement was obtained as the result of arm's-length negotiations between experienced counsel. As noted above, prior to the filing of the *Dix* Lawsuit, the Parties attended a mediation with Nancy Huston in October 2017, and continued negotiations in the months following the mediation, including soliciting and ultimately accepting the mediator's proposal on February 8, 2018, which resolved both the *Parker* and the *Dix* Lawsuits. During this time, the Parties expended substantial time and effort investigating and researching the merits of the Illinois Settlement Class' claims and Silverleaf's defenses. These efforts provided the basis for the Parties to reach a settlement that each party believed was fair, reasonable, and adequate.

Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (stating that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Sec. Litig*., 210 F.R.D. 694, 700 (E.D.

Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). Moreover, public policy favors settlements. *See Quintanilla v. A & R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *6 (S.D. Tex. May 7, 2008). This is particularly true in cases, such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). For these reasons, the Court should find that the Illinois Rule 23 Class Settlement Agreement is a fair, reasonable, and adequate resolution of *bona fide* disputes over the Illinois state law claims listed above, and grant preliminary approval of proposed settlement of the claims of the Illinois Settlement Class.

Plaintiffs also request that the Court designate Christopher Dix and Aaron Kessler as Class Representatives and designate Plaintiffs' Counsel herein as Class Counsel for the Illinois Settlement Class. The Parties further request that the Court designate Kurtzman Carson Consultants, LLC ("KCC") as the Claims Administrator, and approve the Notice attached to the Illinois Rule 23 Class Settlement Agreement for distribution to the Illinois Settlement Class in the manner described in the Illinois Rule 23 Class Settlement Agreement.

**C.    The Standards for Certification of the State Law Class Are Satisfied**

The Illinois Settlement Class may be conditionally certified for settlement purposes under the requirements of Rule 23. To maintain a lawsuit as a class action under Rule 23 of the Federal

Rules of Civil Procedure, the Plaintiffs must meet the four requirements outlined in Fed. R. Civ. P. 23(a), which states:

> One or more members of a class may sue . . . as representative on behalf of all only if:
>
> (1)    the class is so numerous that joinder of all members is impracticable ["numerosity"];
>
> (2)    there are questions of law or fact common to the class ["commonality"];
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

FED. R. CIV. P. 23(a). In addition to demonstrating numerosity, commonality, typicality, and adequacy, Plaintiffs must also satisfy at least one requirement of Federal Rule of Civil Procedure 23(b).

### 1.    The Proposed Illinois Settlement Class Satisfies the Requirements of Rule 23(a)

The proposed class meets the requirements of Rule 23(a). With approximately 1,000 putative class members, numerosity plainly exists. *See Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (affirming that a proposed class of 100–150 satisfied the numerosity requirement).

Second, the Illinois Plaintiffs assert that the commonality requirement is satisfied because there are common questions of law or fact, including whether Silverleaf violated the Illinois wage and hour laws listed above with regard to the Illinois Settlement Class. *See* FED. R. CIV. P. 23(a)(2); *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997) ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of

putative class members."). While Silverleaf disputes that commonality actually exists, it will not oppose such a finding for purposes of this settlement only.

Third, the Illinois Plaintiffs assert that the typicality requirement is satisfied because the Illinois Plaintiffs' claims arise from the same nucleus of operative facts as the claims of the putative class members. *See Mullen*, 186 F.3d at 625; *Forbush v. J.C. Penney Co., Inc*., 994 F.2d 1101, 1106 (5th Cir. 1993) (stating that the test for typicality is not demanding). Although Silverleaf disputes that Plaintiffs have claims typical of the individuals they purport to represent, for purposes of this settlement, Silverleaf does not oppose a finding of typicality.

Fourth, the Illinois Plaintiffs assert that the adequacy requirement is satisfied because the interests of the Illinois Plaintiffs and proposed Class Representatives, Christopher Dix and Aaron Kessler, are sufficiently aligned with those of the putative class members, and the Illinois Plaintiffs have vigorously pursued this litigation. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001); *Mullen*, 186 F.3d at 625–26. The Illinois Plaintiffs also assert that there is no antagonism between the interests of the Illinois Plaintiffs and proposed class representatives and the putative class members. Both the Illinois Plaintiffs and the putative class members seek monetary relief under the same set of facts and legal theories. Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed. *In re Wirebound Boxes Antitrust Lit.*, 128 F.R.D. 268 (D. Minn. 1989). Moreover, Plaintiffs' counsel are competent, qualified, and experienced, particularly in the prosecution of similar FLSA and state wage and hour collective and class actions, further supporting an adequacy finding for settlement purposes. *See* Wills Dec., ¶ 10–11, 29-30; *White v. Local 942*, 688 F.2d 85 (9th Cir. 1982). While Silverleaf disputes that Christopher Dix and Aaron Kessler are adequate class representatives, it does not oppose such a finding for purposes of this settlement.

2.    **The Proposed Class Satisfies the Requirements of Rule 23(b)(3)**

In addition to demonstrating numerosity, commonality, typicality, and adequacy, the Illinois state law class satisfies Rule 23(b)(3)'s requirements that (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). In making this analysis, the Court should consider the following factors:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3)(A)–(D).

As discussed above, the Illinois Plaintiffs contend that this entire litigation turns on issues regarding the applicability of the Illinois state wage and hour laws to Silverleaf's conduct, and the applicability of certain defenses, which are common to the entire class under Illinois state laws. As a result, the Illinois state law class presents common operative facts and common questions of law under Illinois state laws. While Silverleaf disputes that common issues predominate over those requiring individualized proof, it does not oppose such a finding for purposes of this settlement.

For settlement purposes, desirability is likewise met in the settlement context because this settlement will resolve the pending lawsuits against Silverleaf in a single, consolidated proceeding—obviating the need for multiple, parallel lawsuits in different jurisdictions which would subject Silverleaf to continued litigation and expenses and the possibility of conflicting

decisions. Moreover, given the commonality of claims relating to Silverleaf's compensation policies, there would likely be little or no interest for each potential class member to proceed with his or her own case. In addition, there is no manageability problem by allowing this case to proceed as a class action because the class has been agreed to by the Parties for settlement purposes.

Under these circumstances, the class mechanism is a superior method of bringing about a fair and efficient settlement of this controversy. Indeed, courts have recognized that hybrid FLSA and Rule 23 classes are appropriate in cases in which the federal claims are similar to the state law wage hour claims. *See Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 253 (2d Cir. 2011); *Ervin v. OS Rest. Svcs., Inc.,* 632 F.3d 971, 981 (7th Cir. 2011)*; Lindsay v. Gov't Emps. Inc. Co.,* 448 F.3d 416, 420–25 (D.C. Cir. 2006). Given the overlap between the FLSA and Illinois state-law claims at issue, and the benefit to all Parties to resolving these issues in a single forum, the Parties respectfully request that the Court grant preliminary approval of the proposed settlement of the claims of the Illinois Settlement Class.

## VI.
## SERVICE AWARDS

Plaintiffs request the Court approve the payment of service awards in the amount of $5,000.00 [FIVE THOUSAND DOLLARS] to Christopher Dix and $5,000.00 [FIVE THOUSAND DOLLARS] to Aaron Kessler. Defendants do not object.  Plaintiffs further request the Court approve the payment of service awards in the amount of $10,000.00 [TEN THOUSAND DOLLARS] each to James Parker, Caitlin Collins, Taylor Jackson, and Zachary Owens. Defendants do not object.

The proposed service awards are fair and reasonable. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts commonly permit payment to class representatives above the amounts received by class members generally). "When determining

[service] awards, courts may consider a variety of factors, including risks to [plaintiffs] in commencing the suit, personal difficulty encountered by [Plaintiffs], the amount of time and effort spent by [plaintiffs], and the personal benefit enjoyed by representative as a result of the litigation." *Tarlecki v. Bebe Stores, Inc.,* 2009 WL 3720872, at *5 (N.D. Cal. Nov. 3, 2009) (citing *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995)); *see also Silva v. Tegrity Pers. Servs.*, No. 4:13-cv-860, 2013 U.S. Dist. LEXIS171465, at *32 (S.D. Tex. Dec. 5, 2013) (stating that the purpose of service awards is to compensate plaintiffs for specific expenses and sacrifices). In *Purdie v. Ace Cash Express, Inc.*, the Court approved $16,665 in service awards to three class representatives for "me[eting] with Class Counsel from time to time to assist in the prosecution of their cases." *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003).

Further, awards, as the ones sought here, are warranted when the plaintiffs have spent a significant amount of time assisting counsel and participating in the discovery process. *See, e.g., In re M.L. Stern Overtime Litig.,* 2009 WL 3272872, at *3–4 (S.D. Cal. Oct. 9, 2009) (awarding class representatives $15,000 each); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving awards of up to $10,000 per class representative); *Camp v. Progressive Corp.,* 2004 WL 2149079, at *7 (E.D. La. Sep. 23, 2004) (approving service awards to the class representative in the amount of $10,000 each). The above Plaintiffs worked closely with Class Counsel, including assisting with contacting potential witnesses, attending and assisting with mediation, and attending depositions. Wills Dec., ¶ 31–32. Based on their contributions, the requested service awards are fair and reasonable.

# VII.
## <u>ATTORNEYS' FEES</u>

As part of the settlement, the Parties have agreed that Plaintiffs' counsel may apply to the Court for an award of attorneys' fees and costs of forty percent (40%) of the gross settlement amount without objection from Silverleaf. This amounts to $500,000.00 for the FLSA settlement, and $100,000.00 for the Rule 23 settlement. In the Fifth Circuit, the "customary contingency" is the range of 35% to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). Further, "the most critical factor in determining a fee award is the degree of success obtained." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because Silverleaf vehemently denies that the Plaintiffs were improperly paid, underpaid, or that any alleged damages are owed. Accordingly, Plaintiffs' counsel believes a fee of forty percent is reasonable. Plaintiffs' counsel also seeks reimbursement of their litigation expenses, which total $25,757.21 in advancement of the claims of the FLSA Plaintiffs and shall not exceed $7,500.00 in advancement of the Rule 23 Illinois Plaintiffs. Wills Decl., ¶ 47. Moreover, in *Edwards v. KB Home*, Judge Costa approved an award of 40% in attorneys' fees under similar circumstances. *Edwards v. KB Home*, No. 3:11-cv-240 [Dkt. 269, Joint Motion for Preliminary Approval of Rule 23 Settlement Class, at pp. 22–26]; [Dkt. 277, Order Granting Final Approval, at p. 3].

In analyzing the reasonableness of a fee, federal courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonably hourly rate and, in its discretion, applying an upward or downward multiplier. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). While the Fifth Circuit has never explicitly endorsed the percentage method for common fund cases, it has been

amenable to its use so long as the framework set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), is utilized to ensure that the fee awarded is reasonable. *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 643. Indeed, the percentage method blended with a *Johnson* "reasonableness check" is commonly used by district courts in this circuit. *See, e.g., Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673–75 (N.D. Tex. 2010); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 751 (S.D. Tex. 2008); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859 (E.D. La. 2007).

A "cross-check" of the *Johnson* factors further establishes the reasonableness of Plaintiffs' counsel's fee request. The following *Johnson* factors are employed in cross-checking the reasonabless of the requested attorneys' fees: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, repuation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 761 (S.D. Tex. 2008).

These factors also support the attorney fee request:

(1) The time and labor involved—In assessing the reasonableness of attorneys' fees, courts rely on the lodestar method, which is determined by multiplying the number of hours

reasonably expended by counsel by a reasonable hourly rate. *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004). Class Counsel have collectively expended 2,622.75 hours of professional time to date, and will incur an estimated additional 100 hours in order to complete the settlement. Wills Dec., ¶ 43, 47. The total lodestar to date for this matter is in excess of $1,007,743.75, based on the proposed hourly rates set forth above and the 2,622.75 hours of professional services expended in these matters. Accordingly, the $500,000.00 and $100,000.00 amounts sought as attorneys' fees in this matter are appropriate.

(2) <u>The amount involved and results obtained</u>—This settlement puts meaningful relief into the hands of the FLSA and Rule 23 plaintiffs. The FLSA Settlement Agreement provides for a gross settlement fund for the FLSA Plaintiffs in the amount of $1,250,000.00. The average per capita gross compensation is approximately $6,124 with a total of 204 Plaintiffs participating in the settlement. Each FLSA Plaintiff will receive a proportionate share of the net settlement fund according to a formula based on the length of each person's individual tenure and compensation. The FLSA Settlement Agreement further provides for a minimum payment of $250 to each FLSA Plaintiff from the Settlement Fund. Additionally, the Illinois Rule 23 Class Settlement Agreement provides for a gross settlement fund for the Illinois Plaintiffs in the amount of $250,000.00. Each Illinois Plaintiff will receive a proportionate share of the net settlement fund according to a formula based on the length of each person's individual tenure and compensation within the relevant statute of limitations, as well as whether he or she is a participant in the settlement of claims under the FLSA. The Illinois Rule

23 Class Settlement Agreement further provides for a minimum payment of $50 to each Illinois Plaintiff.

(3) <u>The litigation was risky</u>—As evidenced by other wage and hour cases, litigation has significant risks. These included the risk of loss given Defendants' asserted defenses (and defenses that likely would have been asserted by the remaining Defendants in their respective Answers in the *Dix* case, if their pending motion to dismiss was not successful); the risk of further appeal; and, even if the Plaintiffs were to prevail, the risk that a court or jury could find the measure of unpaid hours to be smaller than that sought.

(4) <u>The litigation required significant skill</u>—Counsel effectively and diligently prosecuted this challenging and complicated case.

(5) <u>Plaintiffs' Counsel took the case on a contingency fee arrangement and expended a great deal of their own resources in prosecuting the case</u>— FLSA Plaintiffs' counsel have prosecuted this case for nearly four years and have paid significant costs and expenses up front.  FLSA Plaintiffs contend that their attorneys have expended a great deal of time in the case as well. As of this filing, FLSA Plaintiffs contend that their counsel have expended more than 2,622.75 hours and $25,757.21 in litigation expenses and costs. Plaintiffs' counsels' requests for $500,000.00 (for the FLSA settlement) and $100,000.00 (for the Rule 23 settlement) in attorneys' fees from the settlement funds are fully supported by each of the relevant factors, and are further supported by a lodestar crosscheck. The Court should, therefore, approve the fee.

- 27 -

**VIII.**
**THE PROPOSED NOTICE FOR THE RULE 23 ILLINOIS CLASS SETTLEMENT**
**CONFORMS TO APPLICABLE LAW**

The proposed Notice of Proposed Class Action Settlement (Ex. 4) (hereafter "Notice") meets the standards set forth in Rule 23. The Notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. The Notice also informs proposed members of the Illinois Settlement Class of the nature and principal terms of the proposed Illinois Rule 23 Class Settlement Agreement (as well as an explanation of the method of calculating the potential and final settlement payments), the procedures and deadlines for opting out of the Action and submitting objections, the consequences of taking or foregoing the various options available to members of the Illinois Settlement Class, and the date, time, and place of the final settlement approval hearing.

This Court should order distribution of the Notice to the Illinois Settlement Class in the manner described in the Illinois Rule 23 Class Settlement Agreement. The Court should direct notice to class members "in a reasonable manner." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (citing FED. R. CIV. P. 23(e)(1)(B)). The Parties propose that the Claims Administrator send the Notice by U.S. Mail. Notice by mail provides adequate "individual notice to all members who can be identified through reasonable effort." *Id*. Where the names, addresses, and Social Security numbers of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175. The Parties propose that the Notice be sent to all known and reasonably ascertainable members of the Illinois Settlement Class based on Defendants' records. The Illinois Rule 23 Class Settlement Agreement provides that the Claims Administrator will ensure that all members of the Illinois Settlement Class receive the Notice by taking all reasonable steps to trace the addresses of any member of

the Illinois Settlement Class whose Notice is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches. The Claims Administrator will then promptly re-mail the Notice to members of the Illinois Settlement Class for whom new addresses are found following this "skip trace."

**IX.**
**<u>CONCLUSION</u>**

Accordingly, the Parties respectfully request that the Court enter an order: (1) granting approval of the FLSA settlement and its terms; (2) granting preliminary approval of the terms of the Parties' settlement of the Rule 23 claims of the Illinois Settlement Class; (3) certifying for settlement purposes only the state law class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure as described in the Parties' Illinois Rule 23 Class Settlement Agreement (Ex. 2 hereto); (4) appointing Rhonda H. Wills, Wills Law Firm, PLLC, as class counsel for the Illinois Settlement Class and approving the Illinois Plaintiffs as settlement Class Representatives for the Illinois Settlement Class; (5) approving the service awards as set forth in the FLSA Settlement Agreement; (6) appointing Kurtzman Carson Consultants, LLC as Claims Administrator; (7) approving the form of and directing distribution of the proposed Notice; (8) approving attorneys' fees in the amount of $500,000.00 and $25,757.21 in litigation expenses and costs with respect to the FLSA Settlement; and (9) setting the Final Approval hearing for a date that is 60 days from the date that the Court enters a preliminary approval order in this matter.

Respectfully submitted,

/s/ Rhonda H. Wills
**Rhonda H. Wills (Lead Counsel)**
State Bar No. 00791943
Federal I.D. No. 20699
WILLS LAW FIRM
1776 Yorktown, Suite 570
Houston, Texas  77056
Telephone:  (713) 528-4455
Facsimile:  (713) 528-2047
rwills@rwillslawfirm.com

Kobby T. Warren
Texas State Bar No. 24028113
WARREN HEALY, PLLC
1910 Pacific Avenue, Suite 10500
Dallas, Texas 75201
Telephone: (213) 999-9499
Facsimile: (888) 687-8174

**ATTORNEYS FOR PLAINTIFFS**

/s/ Ruth A. Bahe-Jachna
**Ruth A. Bahe-Jachna (Lead Counsel)**
Illinois State Bar No. 6200855
baher@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8421
Facsimile: (312) 456-8435

Jordan W. Cowman
Texas State Bar No. 04932800
cowmanj@gtlaw.com
Katherine S. Wright
Texas State Bar No. 24095732
wrightka@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

**ATTORNEYS FOR DEFENDANTS
SILVERLEAF RESORTS, INC., SL
RESORT HOLDINGS INC., ORANGE
LAKE COUNTRY CLUB, INC., AND
ORANGE LAKE HOLDINGS, LLP**

/s/ Isabel Crosby
Isabel Crosby
Texas State Bar No. 24050226
DLA PIPER
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4535
Facsimile: (972) 813-6265

**ATTORNEY FOR CERBERUS CAPITAL
MANAGEMENT, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

On March 9, 2018, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I certify I have served all counsel of record electronically:

<u>*/s/ Rhonda H. Wills*</u>
Rhonda H. Wills